EDWARD M. HITCHCOCK v. THE SUPREME TENT OF THE KNIGHTS OF THE MACCABEES OF THE WORLD.

*Damages—Loss of profits.*

1. Damages which are purely speculative in character, and dependent on so many contingencies that they cannot be traced with reasonable certainty to the breach of the contract, are not allowable.

2. Where the contractee breaks a contract for the performance of work and labor after it has been partly performed by the contractor, and then performs the remainder of the work himself, and reaps the profits which the contractor might have made from a full performance, he cannot escape liability for damages if the contractor can show the profits which he made from the partial performance of the contract, and the benefits received by the contractee from its completion.[1]

---

[1] LOSS OF PROFITS.

For cases involving the question of loss of profits as a measure of damages in actions *ex contractu*, see:

*General Rules Applicable to the Subject.*

1. *Clark v. Moore*, 3 Mich. 55, holding:

a—That no damages are ever recoverable in actions *ex contractu* unless they are shown by the party claiming them to be the natural and proximate consequence of the breach complained of; that each of the circumstances which concurred with the breach in producing the damage, and without which it would not have happened, is a part of its cause, and if any of these concurring circumstances are so far out of the ordinary course of nature or of human affairs that they cannot fairly be presumed to have been contemplated by the parties at the time of making the contract, then

Error to Saginaw. (Edget, J.) Argued January 31, 1894. Decided April 10, 1894.

*Assumpsit.* Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Rowland Connor,* for appellant.

*McDonell & Hall,* for defendant.

GRANT, J. The defendant is a corporation organized under the laws of this State, and authorized to issue endowment certificates, payable on the death of members to beneficiaries selected by them, and is operated under the lodge system, the lodges being known as "tents." It was

the damage is not the natural result of the breach, and is therefore not recoverable.

*b*—That the rule that, for the breach of a contract for the sale and delivery of goods for a particular purpose, the vendee is. entitled to recover, not merely the difference between the contract price and the market value, but also the special damage resulting to his private affairs from his not having the goods to use for the particular purpose for which they were intended, though difficult of safe application, seems just and equitable, and has the sanction of the civil law, and, to some extent, is sustained by actual adjudications under our system of jurisprudence; but when such special damages are allowed it must be upon the principle that the vendor's engagement is not merely to deliver the goods, but that the vendee may have the advantage of their use for the purpose specified

*c*—That it can by no means be true that every contract which, on its face, indicates .the purpose to which the goods are to be applied is of this nature, or that a vendor will be liable for such special damages in every case where it appears, even by parol evidence, that the goods were, to . the knowledge of the vendor, purchased for a particular purpose; but to create such extraordinary liability there must in every case be something in the terms of the contract, read in the light of the surrounding circumstances, which shows an intention on the part of the vendor to assume an enlarged engagement,—a wider responsibility than is assumed by the vendor in ordinary contracts for the sale and delivery of merchandise.

2. *Allis v. McLean,* 48 Mich. 428, holding that profits are the best possible measure of damages where their loss is indisputable, and the amount can be estimated with almost absolute certainty; as in the case of advances on the contract price of grain or other articles which have ready sale at a current market price, or where the breach of one contract results in the failure of another contract which would have produced fixed and definite profits.

*Illustrative Cases.*

1. *Clark v. Moore,* 3 Mich. 55, holding that where, on the trial

incorporated in 1885 by five incorporators, who constituted the board of trustees. A Mr. Boynton was secretary and one of the trustees, and to him was committed the chief management of the association. The organization appears to have met with great favor, and before the close of the first year was in active operation in many states and in Canada. It had from 50 to 75 agents engaged in organizing tents. These agents were compensated by a part of a membership fee, a certificate fee, and a quarterly *per capita* tax. No tents could be instituted with less than 15 members in places of 5,000 population or under, or with less than 25 members in places of over 5,000 population. Plaintiff was a man of considerable experience in organizing associations of this character. Negotiations between him

---

of a suit for goods sold and delivered in pursuance of the contract of the plaintiffs to furnish the defendant all the tarred and manilla cordage, spun yarn, and hamline necessary to rig a vessel he was then building, at an agreed price per pound, to be delivered on or before a given date, the plaintiffs proved the delivery of a certain amount of the materials contracted for, and the defendant proved that the amount delivered was less than the quantity required to rig the vessel, and that the plaintiffs refused on demand to furnish the residue, evidence offered by the defendant that, at the time of such refusal, the required materials could not be procured in the home market, and that the completion of the vessel was delayed, and the defendant lost the use of her during the time necessarily occupied in sending elsewhere to procure such materials, was properly rejected, as, admitting these facts, it is sufficiently obvious that the defendant's damage resulted not solely from the failure of the plaintiffs to deliver the materials, but also from the peculiar state of the market, and, if their absence therefrom was an extraordinary and unusual event, it would be contrary to settled principles of law to hold the plaintiffs responsible for damage which was in part caused by it; and which was not the natural consequence of the breach, and could not be presumed to have been foreseen and contemplated by the parties at the time of making the contract; and if, on the other hand, such a state of the market in said city was usual and ordinary, and might have been reasonably anticipated at the time the contract was entered into, the defendant should have offered to make proof of such facts, as there was no ground for a presumption that that was the case.

2. *Burrell v. Salt Co.*, 14 Mich. 34, holding that, where a contractor is prevented from constructing salt vats and covers on the premises of a solar salt company by its failure to furnish the necessary materials as per agreement, he may recover the profits which he would have made had he been suffered to complete the work, and witnesses, in making their estimates, may take into

and Mr. Boynton resulted in the execution of a contract dated October 5, 1885, by which plaintiff was given the sole control of instituting and organizing new tents or subordinate bodies in the state of Indiana. The contract fixed the following compensation for his services:

"1. Sixty dollars of the charter fee for each tent he or his deputies may institute in said state of Indiana.

"2. All the membership fee on all over 15, and under 25, members put in new tents on organization.

"3. One-half of the membership fee on all members put into new tents on organization, over 25 members.

"4. All the *per capita* tax collected by him from the first 15 members in each new tent.

"5. One-fourth of the annual *per capita* tax on the entire membership in the state of Indiana shown to be in good standing on the books of the supreme tent at the close of each quarterly term, the said money to be paid to the said Hitchcock within 30 days thereafter.

---

account the peculiarly favorable season for the performance of the work.

3. *Loud v. Campbell*, 26 Mich. 239, holding that where, by reason of the failure of the defendants to furnish a tug, as per agreement, to tow plaintiffs' vessel into a certain port where she was to receive a cargo of lumber for transportation for defendants to a certain city at an agreed freight per thousand feet, the plaintiffs are prevented from receiving and carrying the lumber, and hindered from earning the clear freight agreed upon, they are entitled to recover, as a part of their damages, the net profits they might have made if the defendants had furnished the tug, it appearing without contradiction that the vessel could have taken a certain amount of lumber, and that her net earnings would have amounted to a given sum.

4. *McKinnon v. McEwan*, 48 Mich. 106, holding that where, in a suit to recover the balance claimed to be due upon a contract for the manufacture and connection in the mill of the defendant of two boilers on or before a given date, said contract being silent as to the particular business which was to be carried on in the use of the boilers, the defendant, in his notice of recoupment, sets forth that the boilers were to be used in his steam-mill and salt block for the purpose of running and operating the same; that they were the only boilers he would have to furnish steam; that the capacity of his salt block was 200 barrels per day; that without the boilers he could not manufacture any salt; that all of said facts were known to the plaintiff; that the boilers were not made and connected until 43 days after the date agreed upon; and that in consequence of such breach the use and profits of the salt block were wholly lost,—and claims the right to recoup the profits he would have made during said 43 days, it is not error to refuse to allow said claim.

5. *Allis v. McLean*, 48 Mich. 428, holding that where the owner

"'6. He shall also receive as compensation for visiting organized tents within the state, with a view of building them up and increasing their membership, all the quarterly *per capita* tax paid in by new members secured in such work, and also such portion of the membership fee as may be agreed upon between him and the tents. The aforesaid proportion of charter fee, membership fee, *per capita* tax, etc., shall be full and complete compensation for such services."

It provided, further, that plaintiff should give his full time and services to the work, and execute a good and

---

of a saw-mill contracted for a certain kind of feed works, to be shipped in season to enable him to place the same in his mill and commence the manufacture of lumber at the commencement of the sawing season, and the works were not shipped until about four months after the time agreed upon, though frequently promised, but the contractor supplied the mill owner with other feed works, which enabled him to start up and use the mill until the works contracted for were received, except for 16½ days, when the mill lay idle, loss of profits from the inability to manufacture lumber during said 16½ days is too uncertain to provide a measure of damages for the breach of the contract.

6. *Goodrich v. Hubbard*, 51 Mich. 62, holding that the measure of damages for preventing the performance of a contract to haul and deliver certain saw-logs at an agreed price per thousand feet may include the loss of profits, if there is no uncertainty as to what they would have been; and if the plaintiff does not elect to consider the contract broken before the time for full performance has expired, and the cost of doing the work has meanwhile fallen, he is entitled to recover what difference there is to his advantage.

7. *Atkinson v. Morse*, 63 Mich. 276, holding that a contractor, who is wrongfully prevented by the contractee from performing a contract to cut, haul, and deliver all the merchantable cedar on certain lands at a fixed price, can recover as damages the profits he would have made if he had been allowed to perform the contract, the measure of which is the difference between the cost of the work to be performed and the contract price.

8. *Petrie v. Lane*, 67 Mich. 454, holding that where, on the trial of a suit to recover damages for the failure of the defendant to deliver certain saw-logs, which the plaintiffs had agreed to saw into lumber and pile upon the plaintiffs' dock at an agreed price per thousand feet, the plaintiffs do not offer to show that they have incurred any damage by reason of expenses necessarily incurred in preparing to perform the contract, or that their mill has been idle by reason of defendant's failure to furnish said logs, and do not even claim nominal damages, but, as matter of law, claim to be entitled to the profits upon all of the logs mentioned in the contract, independent of any fact or thing showing actual damages, a verdict is properly directed in favor of the defendant.

9. *Leonard v. Beaudry*, 68 Mich. 312, holding, in a suit by a mill-owner to recover damages for the non-delivery of logs under a contract for their manufacture into lumber at an agreed price per thousand feet, that the measure of damages is the difference

sufficient bond, in the sum of $500, for the faithful performance of his duties, and the turning over of all moneys belonging to the supreme tent. It also contained the following provisions:

"It is further agreed between the parties hereto that, whenever a great camp is organized in said state, then this agreement shall be null and void, and of no binding force. It is also agreed that, whenever either party to this agreement desires to cancel the same, at least 30 days' notice

---

between the cost of manufacture and the price agreed to be paid therefor.

10. *Rayburn v. Comstock*, 80 Mich. 448, holding that where, after the partial performance of a contract to cut and deliver all of the timber suitable for saw-logs upon certain lands at a specified price per thousand feet, the contractors are prevented by the contractees from completing the contract, and the remainder of the timber is cut and delivered by the contractees and by another contractor, the difference between the cost of completing the contract and the contract price is a proper measure of damages in a suit by the first contractors for breach of the contract.

11. *Davis v. Davis*, 84 Mich. 324, holding that where, in a suit to recover for milk-cans sold to a creamery company, the defendants seek to recoup damages for loss of profits arising, as claimed, from a breach of the agreement of the vendors to protect the defendants in the exclusive use of that kind of can in specified territory, and the testimony fails to show that, if other creameries had not used the can in the territory, the residents therein would have furnished cream to the defendants in preference to the other creameries in *other* cans, but does show the refusal of a portion of such residents to supply defendants with cream in the kind of cans purchased, there is nothing tangible upon which the jury can base an estimate of defendants' loss of profits on account of such competition.

12. *Mueller v. Mineral Spring Co.*, 88 Mich. 390, holding that the measure of damages for the breach of a contract by which the plaintiff was made sole agent in certain territory for the sale of mineral water of which the defendant was the sole proprietor, and which it agreed to furnish to the plaintiff at an agreed price, is the profits which the plaintiff might have realized on sales if the defendant had performed the contract.

13. *Hutchinson Manufacturing Co. v. Pinch*, 91 Mich. 156, holding that the prospective profits, arising from the use of a custom and manufacturing flouring-mill, are too speculative to be shown as a measure of damages for the breach of a contract for furnishing machinery and repairing the mill within a specified time, and by reason of which breach the owner lost the use of the mill.

14. *Lee v. Briggs*, 99 Mich. 487, holding, in a suit by a contractor for being prevented from performing a logging contract by the sale by the contractees of that portion of the land out of which alone a profit could have been made, that the difference between the cost of cutting and removing the timber from the entire lands and the contract price is a proper measure of damages.

must be given by the party so electing. This agreement cannot be canceled without the consent of all parties to the contract."

No great camp could be organized in any state until there were at least 50 tents and 2,000 members.

Plaintiff furnished his bond, received his commission, and immediately entered upon the work. In 13 months he had organized 10 tents, with a total membership of 268. The defendant then broke the contract, early in 1887, and demanded a surrender of plaintiff's original commission, which he refused, and then left its employ. The defendant immediately placed other agents in the state, who established 40 more tents, and brought the membership up to a sufficient number to establish a great camp.

Upon the trial the learned circuit judge directed a verdict for the plaintiff, under clause 5, for one-fourth of the annual *per capita* tax paid in by the members of the 10 tents which he organized, and who continued as members, which, with interest, amounted to $454.25. As to the other damages claimed, the judge held that they were speculative, that there were no certain *data* from which they could be computed, that they were uncertain of ascertainment, and directed a verdict for the defendant.

All questions arising under this contract, except that of damages, have been determined in favor of plaintiff by the verdict and judgment. From this determination defendant has not appealed. The only question, therefore, before this Court, is the ruling of the court below as to the measure of the damages. Plaintiff insists that he introduced and offered evidence from which the jury might, with reasonable certainty, determine the profits which he might have made, but which were lost to him by the violation of the contract. He gave evidence tending to show the profits made on the contract while he was engaged in the work. He offered to show that the first labor of

starting the enterprise is more expensive than that which follows, and that after the work is fairly started it is easier to organize tents than at first. He also offered a statement taken from the books of the defendant, showing the organization of 40 tents after the breach of the contract; 125 members in new tents, over 15 and under 25; 66 members in new tents, over 25; and the total number of new members. From this statement he made up his total claim, as follows: Charter fees, 40 tents, $2,400; membership fees under clause 2 of the contract, $625; membership fees under clause 3, $165; *per capita* tax under clause 4, $300; *per capita* tax under clause 5, $2,956.83.

The rule governing these cases is established by an unbroken line of authorities,—that damages which are purely speculative in character, and dependent on so many contingencies that they cannot be traced with reasonable certainty to the breach of the contract, are not allowable. The difficulty lies in determining whether the facts of a particular case bring it within or without this rule. There is no sounder basis for damages for breach of contracts of this character than the profits, when they can be determined with proximate and reasonable certainty. In fact, there is no other basis. Their loss is the natural and proximate result of a breach, which the law presumes that each party foresees. . The rule does not require that such *data* be furnished that they can be computed with mathematical exactness. When one breaks a contract which the other party has partly performed, and the violator then performs the work himself, from which he reaps the profits which the other party might have made, he cannot escape liability for damages, if such other party can show the profits made while he was executing it, and the benefits received from its subsequent completion. The contract in this case was specific and definite in all respects, fixing

the amount of work and the price. It was contemplated that the plaintiff should make profits, and the defendant was to be benefited by his work. These results were being successfully accomplished when the contract was broken. In case of a breach by plaintiff, defendant could perform the work, and recover as damages the difference between the price agreed upon and the cost of completion. In case of a breach by defendant, the profits lost constitute the legitimate measure of damages. The law is not so blind to justice as not to require the defendant to respond in damages, if there is any reasonable basis for their ascertainment. There is no presumption, legal or otherwise, that the plaintiff could not have completed the work. The defendant was satisfied with the success of the plaintiff. It is a fair presumption that he would have succeeded. It is a fair inference from the evidence that the defendant's officers broke the contract because of this success, and the belief that they could secure the accomplishment of the work cheaper, which they in fact did. The defendant took advantage of the work which the plaintiff had done, and completed it. The defendant may not now say, "It is true I completed the work, but there is no certainty you could."

This is not a case where one party agrees to sell goods for another for a year, to receive as compensation his share of the profits made; but it is a case where one agrees to sell a certain amount of goods, with no limit as to time, at a given price, and for a given compensation, and also where the goods have been sold at the same price within the agreed territory, and within the time contemplated. It has been demonstrated, not only that the work could be, but that it has been, done. It is a fair inference that it could have been done as well by the plaintiff as by the defendant. One element of damage is established by the contract, and the evidence from the

defendant's own books, viz., the amount agreed to be paid, and the benefits reaped by it. The only other element is the cost of doing the work, which, deducted from the amount to be paid, would establish the profits. The expense of what plaintiff did is some evidence upon which to base a judgment of the expense of doing the rest of the work. If that be the only evidence as to the cost, and plaintiff can establish by experience that it is more difficult and expensive to accomplish the first part of the work than the last part, defendant cannot complain if the jury take that as a basis to determine the cost. On the contrary, such basis would be favorable to the defendant; and, if this was the only basis, we think, under the circumstances of this case, it was sufficient to justify a submission of the case to the jury. He who breaks his contract may not deny to the injured party the fair inferences to be drawn from the part performed.

In *Bagley v. Smith*, 10 N. Y. 489, one partner sued another for breach of the partnership articles, and recovered profits lost by the unauthorized dissolution. The court say:

" The loss of profits is one of the common grounds, and the amount of profits lost one of the common measures, of the damages to be given upon a breach of contract. * * * It is very true that there is great difficulty in making an accurate estimate of future profits, even with the aid of knowing the amount of the past profits. This difficulty is inherent in the nature of the inquiry. We shall not lessen it by shutting our eyes to the light which the previous transactions of the partnership throw upon it. Nor are we the more inclined to refuse to make the inquiry by reason of its difficulty, when we remember that it is the misconduct of the defendant which has rendered it necessary."

A review of the vast number of authorities upon this subject would involve a critical statement of the facts of

each case, and the writing of an opinion of unnecessary length. It is sufficient to say that we think this case comes within, and is ruled by, the following authorities: *Wakeman v. Manufacturing Co.*, 101 N. Y. 205; *Treat v. Hiles*, 81 Wis. 280; *Mueller v. Mineral Spring Co.*, 88 Mich. 390; *Oliver v. Perkins*, 92 Id. 304. The case of *Wakeman v. Manufacturing Co.* is similar in its facts to the present case, and many of the authorities are there collated and discussed.

Judgment reversed, and new trial ordered.

The other Justices concurred.