### SWARTZ et al. v. PARK.

(Court of Civil Appeals of Texas. Ft. Worth. April 12, 1913. Rehearing Denied May 17, 1913.)

1. BROKERS (§ 11*)—BREACH OF CONTRACT—PREVENTION OF PERFORMANCE — LOSS OF PROFITS.

Where the owners of a number of lots gave an exclusive agency for their sale to another at an agreed compensation for each lot sold, and thereafter sold some of the lots through other agents in violation of their contract, the agent was not entitled to recover the full compensation for all the lots sold by others, but only the loss of profits on such sales as he could have made except for the breach.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 58; Dec. Dig. § 11.*]

2. PLEADING (§ 193*) — DEMURRER TO COMPLAINT—MEASURE OF DAMAGES.

A petition, which alleged the plaintiff's damage to be the full compensation allowed by a contract for lots sold by others, is not subject to general demurrer, since it is not necessary to plead the measure of damages.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 425, 428–435, 437–443; Dec. Dig. § 193.*]

Conner, C. J., dissenting.

Appeal from District Court, Tarrant County; R. H. Buck, Judge.

Action by A. F. Park against C. A. Swartz and another. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Goree & Turner, of Ft. Worth, for appellants. Alexander, Power & Ridgway, of Ft. Worth, for appellee.

CONNER, C. J. A. F. Park sued C. A. Swartz and G. V. Harris, doing business under the firm name of the Rock Island Townsite & Realty Company, and hereinafter referred to as defendants, alleging that on the 17th day of September, 1909, the defendants entered into a written contract by the terms of which the plaintiff had been appointed the exclusive sales agent for the sale of certain lots owned by the defendants in the town of Loveland, Okl., therein delegating to the plaintiff full power and authority in the management of all sales, and agreeing to pay him $50 on each contract sold by him. It is further alleged that the plaintiff had entered upon the performance of the contract, had expended large sums in advertising, in traveling expenses, etc., and had sold a large number of contracts, but that, notwithstanding

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

his appointment as exclusive agent, the defendants in violation of their said agreement, through other agents and persons unknown to the plaintiff, had sold 118 contracts, embodying all of the lots owned by the defendants that had not been sold by the plaintiff. The plaintiff thereupon sought to recover upon the contract the sum of $3,290, and, in the alternative, that sum as for damages for a breach of the contract. The case was tried before a court without a jury and judgment was rendered in favor of the plaintiff against the defendants Swartz and Harris for the sum of $3,290, with interest, and the last-named persons have prosecuted this appeal.

The contract declared upon is as follows:

"State of Oklahoma, County of Tillman.

"This contract made and entered into this 17th day of September, A. D. 1909, by and between the Rock Island Townsite & Realty Company of Frederick, Oklahoma, party of the first part, and A. F. Park of Fort Worth, Texas, party of the second part, Witnesseth:

"Party of the first part hereby contract with the said party of the second part herein to act as exclusive sales agent for all the unsold lots in the town of Loveland, Oklahoma, owned or controlled by said party of the first part, hereby delegating to the said A. F. Park full power and authority over the management of said sales and the contracting for the advertisement thereof, for which advertising the party of the first part herein agrees to donate five contracts, or so much thereof as is needed to defray the expense of said advertising.

"(2) Party of the first part agrees to pay to said party of the second part the sum of $50 for each contract sold and properly executed, as follows, to wit: Party of the second part is to retain the first payment of $10 on each contract as sold, and $5 of each subsequent $10 payment paid to said party of the first part by said purchaser, is to be paid to said second party until the sum of $50 his full commission on each contract, has been paid.

"(3) Party of the first part further agrees to forward to A. F. Park at Fort Worth, Texas, on or before the 15th of each month, a statement showing the amount each purchaser has paid on contracts sold by said party of the second part, and inclosing with said statements a draft covering the amount due said party of the second part as per this contract on sales so made by him.

"(4) For and in consideration of the above contract the said party of the second part hereby agrees to exert his earnest endeavors toward the advertisement and sales of the unsold lots of the said town of Loveland Oklahoma, and upon the execution of this contract and the receipt of the printed literature and 'Purchasers' Contracts' from said first party, the said second party is to begin immediately to carry out the terms of this agreement, and to prosecute the same vigorously till all of said lots are sold, or till such time as it is agreed between the parties hereto that this contract shall terminate.

"(5) It is further agreed that the said second party shall forward all contracts sold to the home office of the party of the first part, at Frederick, Oklahoma.

"Witness our hands the 17th day of September, A. D. 1909. The Rock Island Townsite & Realty Company, by C. A. Swartz, G. V. Harris, Managers, A. F. Park, Party of the Second Part."

The court filed the following conclusion of facts:

"(1) I find that defendants C. A. Swartz and G. V. Harris, transacting business under the firm name of the Rock Island Townsite & Realty Company, entered into a contract with plaintiff A. F. Park, on September 17, 1909, whereby said defendants employed plaintiff as exclusive sales agent for all the unsold lots in the town of Loveland, Okl., owned by defendants, amounting at that time to about 1,500 lots or 500 'purchasers' contracts' as they were called by the parties.

"(2) I find that by terms of said contract plaintiff was to have full power and authority over the management of all sales of said lots or 'purchasers' contracts' and the contracting for advertising therefor, and was to exert his earnest endeavors toward the advertisement and sale of said lots until such time as all of said lots were sold, or until it was agreed between the parties thereto that said contract should terminate; that plaintiff waived his rights to commissions on sales of lots or contracts made by defendant Harris, but there was no waiver of commissions on sales made by any other persons, acting under said plaintiff, or otherwise.

"(3) I find that by said contract defendants agreed to pay to plaintiff $50 for each 'purchasers' contracts' sold.

"(4) I find that plaintiff went to work under said contract advertising all of said lots, selling lots or 'purchasers' contracts,' spending money traveling and appointing agents to sell the same, paying out about $1,000 of his own money for such expense, and generally performed his part of the contract with defendants, until about November 1, 1911, when said contract was terminated by all of said lots or 'contracts' having at that time been sold.

"(5) I find that defendants by their depositions confess that they owe the plaintiff the sum of $3,290 on sales made of said lots or contracts, and that defendants made no motion to suppress said depositions.

"(6) I find that defendants, C. A. Swartz and G. V. Harris, and the firm the Rock Island Townsite & Realty Company, owe and are indebted to plaintiff, A. F. Park, the sum of $3,290 on sales made of said lots or contracts."

[1] Upon these findings the judgment already indicated was entered, and the majority announce the following conclusions, viz.

"That the contract, when construed in its entirety, contemplates that appellee should receive the compensation of $50 per sale only upon those sales made by him, and that it does not provide or specify the compensation to be paid to appellee in the event of a breach of the contract by the appellants. The third finding of fact, therefore, is contrary to the written contract, and the assignment complaining of such finding is sustained. The majority are also of the opinion the evidence does not show such willful refusal on the part of appellants to answer the interrogatories propounded to them as to authorize their being taken as confessed, and the fourth assignment of error, complaining of the fifth finding of fact, is therefore sustained. See Bounds v. Little, 75 Tex. 319 [12 S. W. 1109]; Robertson v. Melaskey, 84 Tex. 559 [19 S. W. 776]. For these errors the judgment of the district court must be reversed, and the cause remanded for another trial.

[2] "In view of the reversal we think it proper to state that the general demurrer was properly overruled because the petition alleged a breach of the contract of exclusive agency to appellee's damage in the sum stated. Of course the pleader need not plead his measure of damage, and whatever that may be in this case, a general demurrer will not call it in question. Viewing the case, then, as an action for damages for wrongful breach of contract, we think the general principle applies that appellee would be entitled to recover as damages such sum as he shows by his evidence he was prevented from earning by the wrongful conduct of appellants. In other words, he can only be compensated for the loss sustained by reason of the breach. Jackson v. Stephenson [52 Tex. Civ. App. 532], 114 S. W. 848; Stringfellow v. Powers [4 Tex. Civ. App. 199], 23 S. W. 313; Waterman v. Boltinghouse [82 Cal. 659], 23 Pac. 195; J. I. Case Threshing Machine Co. v. Wright Hdw. Co., 130 S. W. 729; Dole v. Sherwood [41 Minn. 535, 43 N. W. 569], 5 L. R. A. 720 [16 Am. St. Rep. 731]; Roberts v. Minneapolis Threshing Mach. Co. [8 S. D. 579], 67 N. W. 607 [59 Am. St. Rep. 777]; English v. Wm. George Realty Co. [55 Tex. Civ. App. 137], 117 S. W. 1000; Duval v. Moody [24 Tex. Civ. App. 627], 60 S. W. 269; Milligan v. Owen, 123 Iowa, 285, 98 N. W. 792; 19 Cyc. 194 and 221 (VII). We do not think it necessarily follows, upon a breach by the appellants, that appellee would be entitled to recover as damages the maximum commissions which he would have earned by a performance. It cannot be said indisputably that he would have performed and thus earned such commissions, for it is only upon such performance that the compensation was to be made. If this view of the case were adopted, appellee would be placed in a better position by appellant's breach than he would occupy without it, for he would then be entitled to recover the maximum compensation without a performance on his part, and without a showing of his ability to perform. We do not think the many cases which hold, upon a breach by an employer of a contract for personal services, the employé may sue for and recover the agreed compensation are contrary in any wise to the holding here made. In those cases, in order to authorize the plaintiff's recovery, he has only to allege and prove a willingness and readiness to perform and in the nature of the case he thus necessarily shows his ability to perform. Such suits are not like the present case, where as a condition precedent to recovery, a specific thing must be done. The fact that appellants through other agents actually sold the 'contracts' may possibly be some evidence tending to show that appellee could have done so, and thus earned his commissions, but such evidence is by no means conclusive, and we cannot therefore hold that the judgment was right any way, and affirm the same, notwithstanding the errors referred to."

With the foregoing opinion of the majority the writer has been unable to entirely agree. He concurs in the view that appellee's cause of action is one for damages for a breach of the contract sued upon, instead of one for its enforcement, but regards the distinction now unimportant. As is to be seen from the court's conclusions, the execution of the contract and its breach by appellants are established. These facts are not disputed, and the record presents no excuse for such breach. It is also undisputed that appellee in good faith undertook the performance of the contract, paid out large sums of money in traveling, advertising, etc., sold numerous "contracts," and it is not contended that the judgment is too large if appellee is entitled to the contract price for the contracts sold by other agents, so that, as it appears to the writer, the real question before us is one of law and not of fact, viz., What is the proper measure of appellee's damages? If under the application of the proper measure to the undisputed facts the judgment is right, it is immaterial, as has often been decided, that the court gave the wrong reason for it. As it appears to the writer, the breach of contract being undisputed and undefended, appellee's loss prima facie is what he would have recovered had he been permitted to sell as his contract gave him the right to do, and hence that the damages, to which he is entitled as compensation under the circumstances stated, should now be measured in the terms of the contract, which specified a sum certain. There is not a suggestion in either the defendants' answer or in

the proof that the plaintiff in this case could not have sold the lots had he not been prevented from doing so by the act of the defendants in permitting sales through other agents, or that for any reason plaintiff's damage is probably less than the contract price, and the burden should now be placed upon the appellants to show that the breach of contract was induced by some failure or want of efficiency upon the plaintiff's part, or that the damage to which he is prima facie entitled should be reduced by reason of facts pleaded and proved by them, and in the absence of such showing the prima facie case should be held conclusive. Such is the rule in cases of ordinary hiring, where, as here, the compensation for the service is fixed at a sum certain. In such cases the rule is quite familiar that where the servant is hired for a stated term and at a fixed price, and he is wrongfully discharged, the burden is upon the employer to plead and prove that the discharge was rightful, or that the servant's damages had been lessened or wholly abrogated by an ability on the servant's part to procure other employment. See 2 Sedgwick on Damages (8th Ed.) 665; Mechem on Agency, § 222. In the section last cited, it is said: "If the action is brought at once upon the discharge, the measure of damages is prima facie a sum equal to the stipulated compensation. This sum, however, the principal may reduce, if possible, by showing the probability of the agent's being able to secure other employment before the term would have expired. The burden of this proof would be upon the defendant. If this rule seems harsh, it is to be remembered that the principal has brought the action upon himself by his own wrongful act, and it is but just that if there be doubt as to the agent finding other employment, the burden of it should fall upon him who might have prevented any doubt at all by performing his agreement." See, also, Donhan v. Hahn, 127 Mo. 439, 30 S. W. 134; Green v. Cole (Mo. Sup.) 24 S. W. 1058; Metcalf v. Kent, 104 Iowa, 487, 73 N. W. 1037; Carle v. Parent, Montreal L. Rep. 5 Q. B. 451; Oberfelder v. J. G. Mattingly Co. (Ky.) 120 S. W. 352; 19 Cyc. 264; an opinion by this court in cause No. 5,648, F. H. McFarland v. D. H. Lynch & Co., 159 S. W. 303; Hitchcock v. Supreme Tent of the Knights of Maccabees of the World, 100 Mich. 40, 58 N. W. 640, 43 Am. St. Rep. 423.

One of the particular contentions herein upon which much stress has been laid is that, viewed as a case for damages, the judgment is unauthorized because of the absence of both allegation and proof on appellee's part that the plaintiff could have sold the contracts that he alleges were in fact sold by other agents. In ordinary cases this would undoubtedly be true, for the general principle that a broker employed to make a sale of lands must, in order to recover commissions, show that he has secured a purchaser ready, able, and willing to buy the land is well recognized, but this principle has no application in cases, as here, where the agency is exclusive, and the commission or compensation is by contract for a fixed sum. Many cases have been examined by the writer, including those cited by the majority, but none of them, except the California case of Waterman v. Boltinghouse, 82 Cal. 659, 23 Pac. 195 (which is very briefly reported), clearly supports the contention in appellant's behalf. A satisfactory answer to the contention as it appears to the writer is to be found in the well-considered case of Hitchcock v. Supreme Tent of the Knights of Maccabees of the World hereinbefore cited. It appears that the Knights of Maccabees was a corporation organized under the laws of Michigan to issue endowment certificates, payable on the death of members to beneficiaries selected by them, and that the corporation was operated under the lodge system, the lodges being known as "Tents." It further appears that the association entered into a contract with Hitchcock by which he was given the sole control of instituting and organizing new tents or subordinate bodies in the state of Indiana; the contract fixing certain specified compensation for each tent organized, etc. The contract was later breached wrongfully, as we must infer, by the Knights of Maccabees, and the plaintiff instituted the suit to recover the amounts he would have received had he been permitted to continue the work and to have organized the tents alleged to have been organized by other agents. The court held that the plaintiff was entitled to recover as sought, and said, among other things, presumably in answer to a contrary contention, that: "There is no presumption, legal or otherwise, that the plaintiff could not have completed the work. The defendant was satisfied with the success of the plaintiff. It is a fair presumption that he would have succeeded. It is a fair inference from the evidence that the defendants' officers broke the contract because of this success, and the belief that they could secure the accomplishment of the work cheaper, which they in fact did. The defendant took advantage of the work which the plaintiff had done, and completed it. The defendant may not now say, 'It is true I completed the work, but there is no certainty you could.' This is not a case where one party agrees to sell goods for another for a year to receive as compensation a share of the profits made, but it is a case where one agrees to sell a certain amount of goods with no limit as to time, at a given price, and for a given compensation, and also where the goods have been sold at the same price within the agreed territory and within the time contemplated. It has been demonstrated not only that the work could

be but that it has been done. It is a fair inference that it could have been done as well by the plaintiff as by the defendant." The language quoted seems peculiarly applicable to the facts of this case. The plaintiff, as found by the court, in good faith entered upon the performance of the contract made by the defendants. He advertised and expended large sums of money in doing so, and in traveling expenses, etc., thus preparing the property in question for a favorable reception on the market. There is not a suggestion in the pleadings or the defendants, or in the evidence that the plaintiff in any way failed to act in good faith, or failed in diligence, ability, or capacity to do the work for which he was employed, or that for any reason he would have been unable to perform the contract the defendants made with him. In other words, so far as shown by this record, the defendants are in the attitude of persons who have deliberately entered into a contract with another for a consideration, in part at least, received by them, and who thereafter without excuse breached that contract, and now undertake to answer the plaintiff's complaint by the bare technical proposition that he has failed to allege and to prove that he could have done what he contracted to do. It is undisputed at least that he sold a large number of contracts, and no reason whatever appears why he could not have as readily sold the remaining contracts as the other agents the defendants in fact selected. Whether such agents were selected because their services could be procured at a less price does not appear, but, in the absence of all explanation, it seems to the writer, as for other reasons it seemed to the trial court, that plaintiff established his case.

The case of F. H. McFarland v. D. H. Lynch & Co., also cited above, was one of our own cases, and as the writer construes the record, it seems very closely in point. In that case, presenting it as briefly as possible, the evidence supported the conclusion that McFarland had given to D. H. Lynch & Co. the exclusive agency to sell a certain tract of land owned by McFarland, for $12 per acre; that D. H. Lynch, who was doing business under the style of D. H. Lynch & Co., advertised the land at his own expense, and made efforts to sell it, but had failed to do so before McFarland breached the contract by selling the land through other agents. D. H. Lynch thereupon instituted suit to recover his commission at the rate of 5 per cent. upon the amount for which the land had been sold. The court in submitting the case to the jury did not require as a condition of plaintiff's recovery that the jury should find that D. H. Lynch had found a purchaser ready, able, and willing to buy, but, on the contrary, refused a special instruction, requested by the defendant, to the

effect that the jury should return a verdict for the defendant, unless they found from the evidence that the plaintiff was the procuring cause of the sale. On appeal to this court from a judgment in the plaintiff's favor, among other assignments of error presented in behalf of McFarland was one complaining of the action of the court in refusing the special instruction indicated, presenting thereunder the proposition that "a broker to be entitled to commission, must produce a purchaser ready, willing and able to purchase, unless his failure to do so is occasioned by the fault of the vendor." In disposing of this assignment with others, we said, among other things, that the proposition quoted was "not the law as applied to the facts of this case." But without further discussion the writer concludes that the criticisms of the trial court's findings are immaterial, and that the judgment on the undisputed facts is right, regardless of the theory upon which the court proceeded. If this be true, the judgment should be affirmed in accordance with rule 62a (149 S. W. x), which in effect provides that no judgment should be reversed on appeal unless "the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case," etc.

In accordance with the opinion of the majority, however, it is ordered that the judgment be reversed, and the cause remanded.