## HOLTON v. MONARCH MOTOR CAR CO.

1. CONTRACTS— BREACH — FRAUDULENT CANCELLATION — QUESTION FOR JURY.

   In an action for damages for the wrongful and fraudulent cancellation of a contract of agency for the sale of automobiles, where the company reserved "the right at its election" to cancel the agreement if plaintiffs' financial condition became such that in the opinion of the company they would be unable to perform, evidence as to defendant's bad faith or fraud, *held*, to present an issue for the jury.

2. SAME—DAMAGES—PROSPECTIVE PROFITS.

   The fact that the actual damages suffered by plaintiffs were somewhat difficult of ascertainment does not furnish a reason for denying all recovery for prospective profits.

3. SAME—CANCELLATION—GOOD FAITH—EVIDENCE—ADMISSIBILITY.

   In view of the fact that one of the grounds given for canceling the contract was defendant's belief that plaintiffs were not strong enough financially to push the sales of cars as they should be, and as bearing upon the state of mind of defendant with respect to plaintiffs' financial ability to do what they promised, testimony of the father of one of the plaintiffs that he was present when the contract was made and assured defendant's president that he would back plaintiffs to the extent of $50,000 in the project, and that he was then able to do so, and that there had been no change in his financial condition in the meantime, was admissible.

4. SAME—EVIDENCE—WRITTEN ORDERS.

   Written contracts for the sale of automobiles made by plaintiffs with motor car dealers were admissible for the purpose of showing what plaintiffs had done toward a compliance with their contract.

5. SAME—DAMAGES—EVIDENCE.

   It not clearly appearing, however, that the vendees in said contracts were obligated to take the number of cars indicated therein, the court below was in error in refusing defendant's request for a construction of them in this respect.

   Per BIRD, MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ.

6. SAME—CANCELLATION OF CONTRACT—FRAUD.

Testimony that plaintiffs were as strong financially wnen the contract was canceled as they were when it was made, less the sums spent in advertising, in the absence of contradictory testimony, *held*, to furnish some ground for a conclusion that the reason given for canceling was not a good faith one.

7. SAME—EVIDENCE.

The fact that a draft drawn against plaintiffs was not promptly met would be a circumstance to be considered by the jury and to be explained.

8. SAME—DAMAGES—MEASURE OF DAMAGES.

If it be assumed that plaintiffs were entitled to recover, under the finding of the jury, it is plain that they cannot recover, as their measure of damages, the sum laid out by them in advertising.

9. SAME.

It being plain that the orders for cars received by plaintiffs were not binding obligations, they furnish no evidence that plaintiffs would have completed sales of so many cars; but the number of cars sold by defendant during the contract period, and the commissions thereon, less the expense of advertising and selling, *held*, to furnish a basis for arriving at the recoverable damages.

Per OSTRANDER, C. J., and MOORE, BROOKE, STONE, and KUHN, JJ.

Error to Wayne; Mayne, J., presiding. Submitted January 23, 1918. (Docket No. 10.) Decided July 18, 1918.

Assumpsit by Hoover Holton and another against the Monarch Motor Car Company for breach of a contract of agency. Judgment for plaintiffs. Defendant brings error. Reversed.

*Stevenson, Carpenter, Butzel & Backus* (*Thomas G. Long* and *Rockwell T. Gust*, of counsel), for appellant.

*Louis H. Wolfe* (*Robert M. Brownson,* of counsel), for appellees.

BIRD, J.   Plaintiffs entered into a written contract with defendant in June, 1914, which gave them the right to sell defendant's motor cars in United States and Canada, for a period commencing on July 1, 1914, and ending on June 30, 1915.   Plaintiffs entered at once upon the work of selling cars, establishing agencies and obtaining contracts from dealers, and at the same time expended in various forms of advertising the sum of $5,037.06.   On September 16, 1914, defendant wrote plaintiffs the following letter, canceling the contract:

"In consideration of the fact that the present 4-cylinder model is moving so slowly that we are unable to go ahead on our new models, and it is necessary for us to move cars in order to have income for our business, and inasmuch as we feel you are not financially strong enough to push the sale of the cars as they should be pushed, we have decided to resume the selling of the cars direct.

"We, therefore, formally cancel the contract entered into between us on June 22, 1914."

In justification of its course in this respect defendant relies on the following provision of the contract:

"Should general sales managers violate any of the covenants of this agreement, or their financial condition becomes such that in the opinion of the company they would be unable to perform the terms of this contract, the company hereby reserves the right, at its election and without making itself liable in any wise to any claim, or action of damages, or waiving or affecting any of its then existing rights against the general sales managers, to cancel and terminate this agreement on giving the general sales managers written notice by mail of its election, in which case the rights of the general sales managers, under or in any way arising out of this agreement, shall be terminated or canceled."

202—Mich.—18.

Plaintiffs then brought this suit to recover damages for a wrongful and fraudulent cancellation of the contract, and obtained a judgment in the sum of $5,073.50. Defendant assigns several errors which it claims should reverse the judgment.

1. Counsel appear to agree that the contract in question comes within the class of contracts where the fancy, taste, sensibility or judgment of the promisor are involved, and that when the right of decision is once exercised by the promisor it cannot be questioned except on the ground of bad faith or fraud. It seems also to be conceded that the only question open upon this phase of the case is whether defendant actually entertained the opinion that plaintiffs were not strong enough financially to carry out the terms of the contract. These concessions of counsel are in accord with the conclusions reached in the following cases: *Wood Mowing Machine Co.* v. *Smith,* 50 Mich. 565; *Isbell* v. *Anderson Carriage Co.,* 170 Mich. 304; *Schmand* v. *Jandorf,* 175 Mich. 88; *Hutton* v. *Sherrard,* 183 Mich. 356; *Garlock* v. *Motz Tire & Rubber Co.,* 192 Mich. 665.

But defendant at this point insists that there was no proof of any fraud or bad faith on its part, and, therefore, the trial court should have directed a verdict in its behalf as requested. Considerable testimony was taken bearing upon this issue. It was shown that in the opinion of Mr. Hupp, who had the management of defendant's business, that cars were not moving on to the market as fast as they should; that plaintiffs were lacking in effort to find buyers, and were not spending sufficient money in advertising to make the sales a success, and that on one occasion a draft made against a car shipped to Canada remained for several days unhonored by plaintiffs. On the other hand, plaintiffs insist that they spent upwards of $5,000 in advertising; that they established agencies and secured

contracts with established agencies and succeeded in making contracts for 1,257 cars, which were approved by the defendant. That at no time did defendant express any dissatisfaction until the letter of cancellation, but on several occasions Mr. Hupp expressed his satisfaction as to the progress of affairs. It was further shown that the father of the plaintiff Morris assured Mr. Hupp when the contract was made that he would back plaintiffs to the amount of $50,000, and it appeared that he was still willing to do so when the contract was canceled. Upon the question of fraud and bad faith the facts of this case are not unlike those in the case of *Hutton* v. *Sherrard, supra.* We there held the facts presented an issue for the jury and we think a like holding should be made on this testimony.

2. Defendant's comment on the measure of damages given to the jury is that—

"the trial court turned the jury loose in a realm of speculation and that there was no evidence in the record to form a basis for an intelligent determination of the jury as to the measure of damages under the rule laid down by the court."

As is frequently the case the actual damages suffered by plaintiffs were somewhat difficult of ascertainment, but this fact does not furnish a reason for denying all recovery for prospective profits, if there can be found in the testimony a reasonably certain basis for computing them. The period for which the contract should be in force was limited and definite. The number of cars which the plaintiffs agreed to purchase was definite. The profit of plaintiffs upon each class of car was definite. The amount of business done by them in the two and one-half months which they had operated under the contract was definite and ascertainable. The number of cars sold by defendant during the balance of the contract year was

shown. The number of agencies established was shown. The number of cars contracted for and with whom contracted were shown. It was further shown that the general demand for gasoline motor cars in the country in 1914 outran the supply up to July 1. With this and other like data before the jury it was proper to submit to them the question as to what, if anything, plaintiffs had lost by being deprived of the right to complete their contract. *Wakeman* v. *Manufacturing Co.*, 101 N. Y. 205. See *Mueller* v. *Mineral Spring Co.*, 88 Mich. 390; *Oliver* v. *Perkins*, 92 Mich. 304; *Hitchcock* v. *Knights of Maccabees*, 100 Mich. 40.

The difficulty of ascertaining with reasonable certainty plaintiffs' damages under this testimony would be no greater than it frequently is in determining future damages in personal injury cases or how much an employee had been damaged by reason of being wrongfully discharged.

3. George Morris, father of plaintiff Morris, was permitted to testify over defendant's objection that he was present when the contract was made and that he assured Mr. Hupp that he would back the plaintiffs to the extent of $50,000 in the project; that he was then able to do so, and that there had been no change in his financial circumstances in the meantime. This was objected to on the ground that the witness was not a party to the contract and was not legally obligated to make good any default of plaintiffs. Keeping in mind that the issue was whether defendant, as a matter of fact, entertained the opinion that plaintiffs were unable to carry out the terms of the contract, we think the testimony was competent as bearing upon the state of mind of defendant with respect to plaintiffs' financial ability to do what they promised.

4. Plaintiffs offered in evidence the contracts which they had made with motor car dealers. These contracts in form are, in part, as follows:

"1. In consideration of an order for two Monarch cars, placed by the dealer with the company at net prices or discounts hereinafter specified, or any additional specifications made and accepted hereunder, the company grants to the dealer the right to sell Monarch cars, as hereinafter provided, in the following territory, viz.:   *   *   *

"2. The above mentioned cars, in models specified shall be delivered as nearly as possible to table, contingent on delays growing out of strikes, fires, accidents, or other causes beyond control, of company and as prior orders of other dealers and the business of the company will permit.

| List Price. | Models. | Number of Cars. | June | July | Aug. | Sept. | Oct. | Nov. | Dec |
|---|---|---|---|---|---|---|---|---|---|
| $1400.00 | Sixes | 35 | | | 1 | 3 | 3 | 1 | 1 |
| $1000.00 | Fours | 50 | | | 2 | 3 | 3 | 2 | 2 |
| $675.00 | Light Monarch | 100 | | | | | 12 | 6 | 6 |

| List Price. | Models. | Number of Cars. | Jan. | Feb. | Mar. | Apr. | May | June |
|---|---|---|---|---|---|---|---|---|
| $1400.00 | Sixes | 35 | 1 | 1 | 6 | 6 | 6 | 6 |
| $1000.00 | Fours | 50 | 2 | 2 | 9 | 9 | 8 | 8 |
| $675.00 | Light Monarch | 100 | 3 | 3 | 20 | 20 | 20 | 10 |

"(Specifications and instructions for the shipment of each monthly allotment of cars must be given company by dealer thirty days in advance. If such specifications and instructions are not in the hands of company thirty days prior to the above monthly delivery table, such failure on the part of the dealer acts as a cancellation of this entire agreement at the election of the company.)'"

It not clearly appearing that the vendees in these contracts were obligated to take the number of cars indicated in the schedule defendant's counsel undertook to show, upon cross-examination of the plaintiffs, the construction placed upon the contracts by the parties. Failing in this effort by reason of the objection of counsel, they then requested the court to construe the contracts in that respect. This the court declined to do saying that the contracts were received for the

purpose of showing what plaintiffs had done toward a compliance with their own contract. They were clearly admissible for this purpose but once admitted a construction should have been placed upon them as to whether they constituted binding sales. Whether 1,257 cars had been sold on contracts which would amount to binding sales was important, not only upon the main question, but upon the question of damages. It was argued to the jury that plaintiffs had sold 1,257 cars upon contracts which had been approved by the defendant, whereas, it is insisted, the contracts upon their face do not appear to be binding contracts to take the number of cars specified in the schedule, but simply the right to purchase a certain number of cars at certain stipulated prices. If the contracts were to be used by plaintiffs upon which to base the argument that 1,257 cars had been sold by plaintiffs, a construction of them in this respect should have been given, as requested by defendant. For the failure of the trial court in this regard the case must be reversed and a new trial ordered, with costs to the defendant.

MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred with BIRD, J.

OSTRANDER, C. J. There was some testimony tending to prove that when the contract in question was made plaintiffs' financial condition and the source from which they might and did expect assistance if any was required were disclosed to defendant's officers. The contract provision for cancellation is, upon this subject,—

"or their financial condition become such that in the opinion of the company they would be unable to perform the terms of this contract."

The letter of cancellation gives more than one reason for cancellation. One is that the four-cylinder model was moving slowly, and another,

"Inasmuch as we feel that you are not financially strong enough to push the sale of the cars as they should be pushed."

If, as the testimony tends to prove, the plaintiffs were as strong financially when this letter was written as they were when the contract was made, less, perhaps, the sums they had expended in advertising, it would seem, in the absence of contradictory testimony, that there was some ground for a conclusion that the reason given for canceling was not a good faith reason. The fact that a draft drawn against plaintiffs was not promptly met would be a circumstance, of course, to be considered by the jury and to be explained. I cannot say there was not testimony affecting the good faith of the defendant in assigning the reasons for canceling the contract. Assuming that the plaintiffs carried the burden upon this point to the satisfaction of the jury, the question of the damages sustained by plaintiffs is a difficult one. It is plain, I think, that they cannot recover the sum laid out by them in advertising. It is equally plain that neither the order for cars given by plaintiffs and stated in the contract nor the orders secured by them were, or were considered to be, binding obligations. The form for the orders was supplied by defendant, the orders themselves approved by defendant. But they furnish no evidence that plaintiffs would have completed sales of so many cars. The number of cars which defendant sold during the contract period would be better evidence of what plaintiffs would have done if the contract had not been canceled. Assuming that the contract was wrongfully canceled, I think defendant cannot urge, at least not without testimony to support the contention, that plaintiffs would not have sold as many cars as defendant did sell in the described territory, the prices being maintained, and there being no considerable change in method of selling. Plainly,

plaintiffs cannot urge that without advertising, without expense to themselves, they could have sold as many cars as defendant did sell. And if it appears that the expense of selling equalled the commissions engaged to be paid, there would be no profit to them.

I concur in reversing the judgment, but am of opinion that the recoverable damages, if there were any, must be worked out upon the lines I have indicated.

MOORE, BROOKE, STONE, and KUHN, JJ., concurred with OSTRANDER, C. J.