FISTER *v.* HENSCHEL.

1. BROKERS—SALE OF REAL PROPERTY—BREACH OF LISTING AGREE-
MENT.

   Claim by defendants that an exclusive sale listing agreement
   given by them to plaintiff for a period of 180 days, with auto-.
   matic 30-day extensions for each lot sold during said period,
   required actual closing of a sale within said period, including
   a delivery of warranty deed and payment of purchase price,
   to effectuate an extension of said agreement, and that the
   trial court erred in finding that said agreement was extended
   for 60 days as a result of 2 purchase orders obtained by
   plaintiff and accepted by defendants within said period, but
   consummated thereafter, *held*, without merit, where such claims
   were contrary to the written agreement between the parties
   and the facts and circumstances surrounding the development
   of the subdivision in question, as adduced during trial of the
   case.

2. SAME—CONTRACTS—BREACH OF CONTRACT—FINDINGS OF FACT.

   Trial court's finding that defendants breached exclusive sale
   listing agreement with plaintiff by failing to recognize an auto-
   matic extension thereof, as provided by the contract, *held*,
   proper, where the agreement was for a period of 180 days,
   with automatic 30-day extensions for each lot sold within said
   period, plaintiffs submitted 2 purchase agreements both of
   which were accepted by defendants within said period, but con-
   summated later, and defendants' claim that the actual closing

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 12 Am Jur 2d, Brokers § 194.
[2] 12 Am Jur 2d, Brokers §§ 194, 219.
[3–5] 22 Am Jur 2d, Damages §§ 171, 172, 174.
[6] 5 Am Jur 2d, Appeal and Error § 839.
[7] 22 Am Jur 2d, Damages §§ 2, 11, 12.
[8] 12 Am Jur 2d, Brokers §§ 157, 163.
[9, 10] 12 Am Jur 2d, Brokers § 64; 22 Am Jur 2d, Damages §§ 171,
172, 174.

of a sale, including delivery of warranty deed and payment of purchase price, was necessary to perpetuate such extension, was in accord with neither the agreement nor the facts and circumstances surrounding the development of the property as adduced during trial.

3. DAMAGES—BREACH OF CONTRACT—LOSS OF PROFITS.

Awards of lost profits are permissible where they can be seen as within the contemplation of the parties at the time of the execution of a contract, spring from the breach thereof, and are subject to determination with a reasonable degree of certainty as opposed to being conjectural or speculative.

4. SAME—BREACH OF CONTRACT—LOSS OF PROFITS.

There is no clear-cut line of demarcation with respect to those lost profits which can be proved with a reasonable degree of certainty as opposed to being conjectural or speculative, and employment of the general test of reasonable certainty is retained for the simple reason that no better test is available, with each case to be judged on its individual merits in light of the general principle and its past application by the courts.

5. SAME—BREACH OF CONTRACT—DAMAGES—LOSS OF PROFITS.

The rule allowing the recovery of lost profits as the result of a breach of contract, where such loss was within the contemplation of the parties at the time of the execution of the contract, springs from breach thereof, and is subject to determination with a reasonable degree of certainty, as opposed to being conjectural or speculative, does not require that such data be furnished that the loss can be computed with mathematical exactness.

6. APPEAL AND ERROR—FINDINGS OF FACT.

Findings of fact by a trial court may not be set aside unless found to be clearly erroneous.

7. DAMAGES—REASONABLE CERTAINTY.

The law is not so blind to justice as not to require a defendant to respond in damages if there is any reasonable basis for their ascertainment.

8. BROKERS—BREACH OF CONTRACT.

It is a mistake to suppose that real estate brokers are without the protection of the law, or that their business is so hazardous and uncertain that parties dealing with them can violate their contracts with impunity.

9. Same — Contracts — Damages — Loss of Profits — Reasonable Certainty.

Award of lost profits to plaintiff as the result of a breach of contract *held*, proper, where he was an established realtor in the area, offered evidence of his sale of roughly comparable lots in the area after the breach, the shortage of lots available to his office for sale due to reliance on the exclusive listing agreement prior to breach, and the cost of doing business as established in the operation of his office, since the rule allowing the recovery of lost profits requires only that they be proved with reasonable certainty, and not that they be computed with mathematical exactness, and particularly where defendant precluded more detailed data as to the exact amount of lost profits by undertaking the sales of lots themselves rather than choosing to employ other real estate agents on any sort of listing or commission basis whatsoever.

10. Damages—Brokers—Breach of Contract—Loss of Profits.

Claim by defendant real estate developers that plaintiff was not entitled to recover lost profits as the result of defendants' breach of an exclusive sale listing agreement because such profits were too speculative in nature *held*, without merit, where plaintiff was an established realtor in the area, offered evidence of his sale of roughly comparable lots in the area after the time of breach, the shortage of lots available to his office for sale due to reliance on the exclusive listing agreement prior to breach, and the cost of doing business as established in the operation of his office, since such evidence was sufficient to establish the lost profits with reasonable certainty, there being no requirement that they be proved with mathematical exactness, particularly where defendants have prevented more exact proof as to the amount of lost profits by undertaking the sales of lots themselves rather than selling through real estate brokers on a commission basis.

Appeal from Berrien; Zick (Karl E.), J. Submitted Division 3 January 4, 1967, at Grand Rapids. (Docket No. 2,099.) Decided September 19, 1967.

Complaint by David P. Fister, doing business as Fister Realty Co., against Gerhard Henschel, Anna L. Henschel, Eugene Hendrix and Charlotte J. Hendrix for commissions allegedly earned under

exclusive sale listing agreement, and for damages for alleged breach of the agreement. Judgment for plaintiff. Defendants appeal. Affirmed.

*Patrick J. Kinney,* for plaintiff.

*A. G. Preston, Jr.,* for defendants.

FITZGERALD, P. J.   On March 18, 1964, an "exclusive sale listing agreement" was signed granting plaintiff exclusive sales rights on property belonging to defendants in Berrien county and then being developed into a subdivision.   The agreement granted such rights for a period of 180 days, with automatic 30-day extensions for each lot sold during the term of the agreement.   The commission rates to be received by plaintiff and the services he was to perform were set forth in the agreement.

Tests made after entering the agreement disclosed a drainage problem on the property requiring the installation of a drain field system to achieve satisfactory building sites.   This installation was completed in August, 1964.

In the interim, three purchase agreements covering lots in the new subdivision were submitted to defendants by plaintiff and accepted.   On October 26, 1964, plaintiff submitted a fourth purchase agreement which was rejected by defendants on the ground that the listing agreement had expired and they no longer wanted to recognize plaintiff as an exclusive agent.

In late October, 1964, defendants informed plaintiff by letter that the exclusive listing agreement had been terminated both for reasons of plaintiff's "failure to perform [his] obligations" and by the terms of the agreement, and that he was to remove his sign from the subdivision.   The letter offered

plaintiff the option of continuing to sell lots in the subdivision on the original commission basis, but absent the right of being exclusive agent for such sales.

Defendants were notified that this arrangement was not acceptable, that their action was construed as a breach of the listing agreement and that in the opinion of plaintiff's attorney such a breach would subject them to an action for money damages. The parties failed to resolve their differences and plaintiff commenced this action in the Berrien county circuit court on December 10, 1964.

Plaintiff's action, in essence, alleged that, but for defendants' wrongful breach of the listing agreement, plaintiff would have sold three-quarters of the lots in the subdivision, giving him gross commissions of $13,492.50. The cost of doing business was calculated by plaintiff as approximately 30% of the gross commissions, leaving net profits of $9,444.75, which amount was claimed as damages from defendants.

The trial judge found for the plaintiff, awarding damages in the amount of $6,100 plus costs. Defendants appeal from this judgment.

The parties are in accord as to the issues presented in this appeal, which they set forth as follows:

"1. Did the exclusive sale listing agreement expire September 18, 1964?

"2. Assuming defendants violated the exclusive sale listing agreement, was Fister entitled to lost profits?"

Defendants' position with reference to the first question is that the agreement expired because of plaintiff's failure to sell any lots during the initial 180-day term. They argue that a sale as contemplated by the agreement means that a closing is

completed, a warranty deed delivered, and the purchase price received. In their view, the purchase agreements obtained and submitted by plaintiff and accepted by them count for nothing as regards extension of the listing agreement. Such a view is in accord with neither the agreement nor the facts and circumstances surrounding the development of the subdivision and adduced during the trial of the case. It is of interest to note that the drainage project was not completed in the subdivision until August, 1964, and that the plat of the subdivision did not receive final approval until November 24, 1964.

We adopt the finding of the trial court based on actual subsequent purchases of lots by parties signing the purchase agreements that 2 lots had been sold within the terms of the agreement as of September 18, 1964, thereby extending the agreement for a period of 60 days. In late October, 1964, prior to the date of expiration of the agreement as extended, it was clearly and unquestionably breached by defendants.

The remaining question involves the measure of damages, if any, which is to be employed with reference to this breach and whether the award of the trial court is in accord with the appropriate standard selected. More specifically, defendants argue that plaintiff was not entitled to "lost profits" as awarded by the trial court, but only to actual damages such as costs and expenses incurred and proved.

Judicial pronouncements on lost profits as a measure of damages in contract cases are in abundant supply in Michigan case law. Broadly put, awards of lost profits are permissible where they can be seen as within the contemplation of the parties at the time of the execution of the contract, spring from the breach thereof, and are subject

to determination with a "reasonable" degree of certainty as opposed to being "conjectural or speculative". *Allison* v. *Chandler* (1863), 11 Mich 542; *Leonard* v. *Beaudry* (1888), 68 Mich 312; *Moline Furniture Works* v. *Club Holding Co.* (1937), 280 Mich 587.

The facts of this case, viewed from the perspective of established precedent, present no obstacles to an award of lost profits with reference to the criteria of contemplation or connection with the breach of the contract. The requirement of reasonable certainty rather than conjecture or speculation, however, presents greater difficulty because no clear-cut line of demarcation between the 2 categories has been or can be developed accommodating the varied factual elements encountered from case to case. Employment of the general test of reasonable certainty is retained then for the simple reason that we have nothing better. 5 Corbin, Contracts, § 1020. In the last analysis, each case must be judged on its individual merits in light of the general principle and its past application by the courts.

The opinion of the trial court on the question of lost profits finds, as a matter of fact, that plaintiff would have sold lots with sufficient frequency to extend the sales agreement until substantially all of the lots in the subdivision had been allocated. The court further found that:

"After taking into consideration the number of lots which the defendants would have retained for their own development, and on which no commission would accordingly have been paid, the number of lots on which a 10% commission would have been paid; the number of lots on which a 5% commission would have been paid; the expenses the plaintiff would have incurred in earning such commission; any duty on the part of the plaintiff to mitigate damages; and after discounting such loss of future

commission income at the rate of 5% per year to arrive at the present value thereof, the court finds that the plaintiff is entitled to damages in the amount of $6,100."

At a hearing on the subsequent motion of defendants for a new trial, which was held approximately 5 weeks after the date appearing on the opinion, the trial judge undertook to give defendants a detailed rundown on exactly how the amount of damages had been computed, without the benefit of review of his notes or the presence of the notes on the bench. After apologies during the course of the explanation relative to the lack of the notes or a review thereof, the trial judge made the following statement:

"But, as I said, the court thought it carefully considered the matter, and on the matter of future damages, probably I suppose—and I don't care if the record shows it—there is some kind of speculation.

"But as far as I am concerned, I intended and thought I dealt with reasonable probability after I found liability."

That the data employed and computations made therefrom in reaching the award of lost profits in the instant case lack the precision and exactitude of an accountant's balance sheet is admitted. But such exactitude is not demanded. "The rule does not require that such *data* be furnished that they can be computed with mathematical exactness." *Hitchcock* v. *Knights of Maccabees* (1894), 100 Mich 40, 47.

The findings of the court are adequately supported by the record and would not be set aside here unless found to be clearly erroneous. GCR 1963, 517.1, 810(2); *Pearl Grange Fruit Exchange, Inc.,* v. *Shembarger* (1966), 5 Mich App 278,

To say here, as did the Court in *Holton* v. *Monarch Motor Car Co.* (1918), 202 Mich 271, 276, that:

"The difficulty of ascertaining with reasonable certainty plaintiffs' damages under this testimony would be no greater than it frequently is in determining future damages in personal injury cases or how much an employee has been damaged by reason of being wrongfully discharged"

would constitute something of a landmark in understatement. See, also, 5 Corbin, Contracts, §§ 1020, 1022.

The trial court was without the benefit of the firm guidelines provided by actual sales data for the period after the breach of contract of the type found in *Hitchcock* and *Holton, supra,* or in *Mueller* v. *Mineral Spring Co.* (1891), 88 Mich 390. The reason that such data is not available in strictly comparable form stems from the action of defendants, after breaching plaintiff's exclusive listing agreement, in choosing not to employ any other real estate agents on an exclusive listing basis or, it would appear from defendant Hendrix' testimony, on any sort of listing or commission basis, but rather undertaking the sales themselves.

Defendants' decision to employ a different sales technique after breaching their contract with plaintiff cannot now be used as a tool to defeat plaintiff's recovery for the breach.

It should also be noted that plaintiff was an established realtor in the area and could offer evidence of his sale of roughly comparable lots in the area after the time of the breach, the shortage of lots available to his office for sale due to reliance on the exclusive listing agreement prior to breach, and the cost of doing business as established in the operation of his office. The existence of such

data removes the instant case from the nature of the enterprises involved in such cases as *Isbell* v. *Anderson Carriage Co.* (1912), 170 Mich 304, and *Tross* v. *H.E.G. Clarke Co.* (1936), 274 Mich 263.

A long standing concept in Michigan law which can be applied to the realty business deserves repeating here in words from well-reasoned cases likewise dealing with the award of damages in the form of lost profits:

"The law is not so blind to justice as not to require the defendant to respond in damages, if there is any reasonable basis for their ascertainment." *Hitchcock* v. *Knights of Maccabees, supra,* 48.

"It is a mistake to suppose that saw-mill owners are without the protection of the law, or that their business is so hazardous and uncertain that parties dealing with them can violate their contracts with impunity." *Leonard* v. *Beaudry* (1888), 68 Mich 312, 322.

Affirmed. Costs to appellee.

T. G. KAVANAGH and QUINN, JJ., concurred.