FUCHS *v.* STANDARD THERMOMETER CO.

1. COMMON COUNTS—WORK AND LABOR—QUANTUM MERUIT—CONTRACTS—EXPRESS AND IMPLIED OBLIGATIONS.

Upon evidence showing the existence of a definite contract that fixed plaintiff's compensation for selling speedometers as agent for the manufacturer, he could not recover on the *quantum meruit;* the damages must be limited by the terms of the express agreement.

2. CONTRACTS — SERVICES — COMMISSION—PRINCIPAL AND AGENT—MUTUALITY.

While damages cannot be recovered for termination of a contract of an agency for the sale of speedometers on

commission which fixed no definite term or specific number to be sold, the contract was not void for want of mutuality, notwithstanding that plaintiff might terminate the arrangement at any time: so far as it was performed the agreement was valid and binding and authorized the recovery of compensation as provided.

3. SAME—EMPLOYMENT—AGENCY—COMMISSION—AGREEMENT.
   Under evidence which, considered in the light most favorable to plaintiff, would entitle him to recover, to the effect that defendant agreed to pay him commissions on reorders secured during a succeeding year by defendant, he could recover compensation for reorders which defendant got after it terminated the contract.

4. SAME—ESTOPPEL—PRINCIPAL AND AGENT—CORPORATIONS—AUTHORITY.
   Where plaintiff negotiated with defendant's representative for an agency to sell speedometers on commission, and, having entered into an agreement, undertook to carry it out to the knowledge of defendant's officers, and defendant corporation enjoyed the avails and benefits of his labor, it was estopped to deny that its representative had authority to execute the alleged contract.

5. SAME—REORDERS.
   A reorder included contracts for an instrument like the speedometer handled by plaintiff under his agency contract, although the later kind sold at an advance of two dollars and was somewhat altered.

Error to Wayne; Hosmer, J. Submitted June 9, 1913. (Docket No. 49.) Decided December 20, 1913.

Assumpsit by Walter M. Fuchs against the Standard Thermometer Company for services rendered under a special agency contract. Judgment for defendant on a directed verdict. Plaintiff brings error. Reversed.

*Sloman & Sloman*, for appellant.

*Clyde I. Webster (Horace G. Williams*, of counsel), for appellee.

In the month of January or February, 1910, plaintiff entered into an oral contract with defendant by the terms of which he became agent for the city of Detroit and vicinity for the sale of an automobile speedometer manufactured by defendant. The time during which the contract was to be in force was left indefinite, though plaintiff testified he was to have the exclusive agency "as long as he sold an average of 50 per month or 600 per year." Plaintiff's counsel disclaimed an employment for any definite time. The oral arrangement was followed by a very voluminous correspondence between the parties. It is unnecessary to quote from the letters, but it may be noted that throughout his entire employment plaintiff carefully refrained from obligating himself to sell a specified number of instruments within a specified time. He was, of course, under the contract, at liberty to discontinue his services at any time. Certain specified percentages were to be paid plaintiff upon all sales, varying in amount according to the size of the contract secured.

Entering upon the performance of his duties, plaintiff endeavored by various means to introduce and sell defendant's instrument to the various automobile manufacturing concerns of Detroit. As a result of his efforts, a contract was entered into between defendant and the Cadillac Motor Company in July, 1910, under which some 10,377 instruments were sold at $8 each. This figure was very much lower than the regular price and necessitated the cutting of plaintiff's commission to 2 per cent., which was done by agreement of the parties. The commission was paid as it accrued, and no claim arises on account thereof. During the latter part of the year 1910, and the spring of 1911, plaintiff sought to interest various other manufacturers in the instrument but was unable to secure any further contract. In March, 1911, plaintiff's agency was terminated and a Mr. Baldwin, an officer

of defendant, was installed as resident manager in Detroit. It is not claimed by plaintiff that the "Cadillac" order can be apportioned "at the rate of 600 per year" so as to continue his agency contract over a period of 16 years or more.

Plaintiff's declaration is upon the common counts in assumpsit, with added special counts based upon the contract. Under the common counts, plaintiff's bill of particulars sets out the value of his services and disbursements in the premises at the sum of $15,000. Under the special counts for loss of commissions which would have been earned but for the alleged wrongful termination of the agency, a claim for upwards of $30,000 is made by the bill of particulars.

BROOKE J. *(after stating the facts)*. At the outset we are satisfied that there can be no recovery upon the *quantum meruit*. *Sullivan* v. *Railway*, 135 Mich. 661 (98 N. W. 756, 64 L. R. A. 673, 106 Am. St. Rep. 403). Plaintiff himself testifies to a definite contract, and his right to recover must be predicated thereon. That contract was confessedly indefinite as to duration and left the plaintiff at entire liberty to abandon his employment at any moment. In case it was terminated at any time it contained no provision for compensating plaintiff for the time and money he had expended in introducing defendant's instrument. The learned circuit judge who tried the case at circuit held the contract void for lack of mutuality, under the authority of *Wilkinson* v. *Heavenrich*, 58 Mich. 574 (26 N. W. 139, 55 Am. Rep. 708), and directed a verdict for defendant.

Plaintiff's counsel ask the following question in their brief:

"Will this court, because defendant could not compel plaintiff to sell a given number of its speedometers, hold that it could at any time terminate plaintiff's

agency and reap the fruit of plaintiff's labors without some compensation therefor?"

The obvious answer to this query is that courts do not make contracts for individuals. If plaintiff chose (as he did) to enter upon his employment under a contract for an indefinite term, without providing for compensation in case of the termination thereof, the courts are powerless to aid him. He might have protected himself but failed to do so.

In our opinion the contract, as testified to, was not void. There was an offer upon one hand and an acceptance upon the other. No damages can be recovered because of its termination, for none were provided for in the contract. But so far as it was performed it was valid and binding upon both parties, and plaintiff is not debarred from recovering compensation under its terms.

Plaintiff testified:

"I cannot claim commission on anything I did not make a sale—that I did not close.

"*Q.* Now, supposing you did not get any order at all, were you to receive any pay then?

"*A.* No, sir."

But again he said:

"*Q.* Then you also claim that in this early conversation that you had with Mr. Abel he agreed to give you the same commission on all reorders?

"*A.* Yes, sir."

It appears that the Cadillac Company entered into a second contract with defendant for the season of 1911-12, under which about 12,000 instruments were sold at $10 each. While the correspondence, which we have carefully examined, seems rather strongly to negative plaintiff's claim as to this alleged phase of the contract, we do not think, in view of the foregoing testimony, that it can be said as a matter of law that no such agreement was made. It is a familiar rule

that, in directing a verdict, the testimony of the party against whom the verdict is directed must be given its greatest probative force. Viewed in this light and as the record now stands, we are of opinion that this question should have gone to the jury.

Defendant urges that, even if the oral contract was .as testified by plaintiff, there can be no recovery because of the lack of authority in Mr. Abel to make it. We do not agree with this view. Mr. Abel was the man sent on by the defendant to conduct negotiations with plaintiff. After he made the contract (whatever it may have been) plaintiff undertook the agency. His employment was known to all of defendant's officers (as is evidenced by the correspondence), and defendant has had the benefit of his services. It cannot now be heard to say that a contract, the avails of which it has enjoyed, was made by its agent without its authority.

It is further contended by defendant that the second Cadillac order was not a "reorder," for the reason that it specified an entirely different instrument at a different price. It is true that the instrument furnished under the second contract was somewhat modified and was sold for $10 instead of $8. These variations, however, should not prevent recovery if the contract to pay a commission upon all reorders was actually made as claimed by plaintiff.

Many authorities are cited in the briefs of counsel upon the question of revocability, but, inasmuch as we are satisfied from an examination of the record the contract was terminated in good faith and for valid reasons, their consideration becomes unnecessary.

The judgment is reversed, and a new trial ordered.

STEERE, C. J., and MOORE, MCALVAY, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.