**BUSHWICK–DECATUR MOTORS, Inc., v. FORD MOTOR CO.**

No. 97.

Circuit Court of Appeals, Second Circuit.

Dec. 30, 1940.

See, also, 1 F.R.D. 19.

Oswald Vischi, of New York City (Daru, Hellman & Winter and Daniel S. Levy, all of New York City, on the brief), for plaintiff-appellant.

Edward E. Weadock, of New York City (Hurd, Hamlin & Hubbell, Vincent W. Farley, and Henry M. Noe, all of New York City, on the brief), for defendant-appellee.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This is a controversy between a former Ford automobile dealer and the Ford Motor Company, arising out of the allegedly unjustifiable termination of that relation by the latter. To show its right to relief herein the plaintiff dealer sets forth three causes of action: one founded on a written agreement between the parties, purporting to govern their relations as "Dealer" and "Company"; another founded on oral promises alleged to have been made by Ford regional officials, that the "dealership" contract would not be terminated without cause; and the third, on further oral promises to allocate to the plaintiff more profitable territory as soon as available. The action was originally brought in the Supreme Court of New York and was removed by defendant to the federal court for diversity of citizenship. The complaint contained also two other causes of action. One, for conspiracy against other defendants, was not removed. Another, for breach of an option agreement for repurchase of Ford products on termination of the dealership relation, was upheld on the pleadings by the court below and is not before us. The appeal concerns the dismissal of the three causes of action first stated, upon defendant's motion for summary judgment, and upon extensive affidavits of both parties. We shall consider each of these three causes, in order.

█ I. The written agreement between the parties is in the standard form of Ford dealership contracts. Its major provisions are stated at some length in the opinion of the court below, D.C.E.D.N.Y., 30 F.Supp. 917, 919, 920; and many provisions are also quoted in Buggs v. Ford Motor Co., 7 Cir., 113 F.2d 618, 620. It provides that the "Company agrees to sell and Dealer agrees to purchase Ford automobiles" and other products, "subject to the right reserved to Company to sell to other Dealers and direct to retail purchasers in any part of the United States without obligations for any commission to Dealer on any such sale." The Company's sales to dealer are "at such net list price, or at such discounts from published list prices as are from time to time fixed by Company," and "List Prices" are subject to change even as to the price of products "shipped, or paid for but not in transit." There are also several terms relating to the methods of shipment and payment, and many relating to the manner in which the dealership business

should be conducted. It is agreed that the law of Michigan should govern construction of the contract. No formula is stated for determining a minimum or maximum amount of products which the Company is obligated to sell, or the dealer to buy, nor is a period fixed for the duration of the agreement; but a paragraph entitled "Termination" states: "This agreement may be terminated at any time at the will of either party by written notice to the other party given either by registered mail or by personal delivery, and such termination shall also operate to cancel all orders theretofore received by Company and not delivered."

It is not disputed that four and a half years after the inception of this dealership, notice of termination was duly given by the Company. Plaintiff contends, however, that such termination was malicious, in bad faith, and contrary to the custom of the trade, and therefore wrongful; in its complaint and affidavits it makes a showing of substantial loss. Defendant stands firmly on its unqualified power to terminate, irrespective of its reasons for doing so, though its affidavits do challenge the charges of malice and bad faith.

Exactly the same termination clause in the same form of contract has been construed to give Ford an unqualified power to terminate the relationship in Buggs v. Ford Motor Co., supra; Ford Motor Co. v. Kirkmyer Motor Co., 4 Cir., 65 F.2d 1001; and Ford Motor Co. v. Alexander Motor Co., 223 Ky. 16, 2 S.W.2d 1031. See also Maddox Motor Co. v. Ford Motor Co., Tex.Com.App., 23 S.W.2d 333; Ford Motor Co. v. Maddox Motor Co., 123 Tex. 608, 73 S.W.2d 517; Motor Car Supply Co. v. General Household Utilities Co., 4 Cir., 80 F.2d 167; and Terre Haute Brewing Co. v. Dugan, 8 Cir., 102 F.2d 425. Other cases are cited and discussed in the Buggs case and in the opinion below. These precedents vary slightly in the legal doctrine they apply. In the Buggs case the contract was held valid and binding throughout, with the power of termination effective and applicable; while in the Kirkmyer and Dugan cases the contract was said to be void for want of mutuality, except as to sales already made. See also Willard, Sutherland & Co. v. United States, 262 U.S. 489, 43 S.Ct. 592, 67 L.Ed. 1086. For our present purposes these theories lead to identical results, thought the first would appear appropriate. The Dugan case makes reference to, though it does not apply, a special Missouri doctrine that an "agent" who has incurred expense induced by his appointment may recover it if he has not had sufficient opportunity to recoup it from the business—a doctrine seemingly not applicable where the relationship has already endured for some time.

With this weight of precedent, in the light of the clear intent of the parties, we feel constrained to hold that defendant had ended its obligations under the contract. But plaintiff contends that the law of Michigan is otherwise and cites therefor J. R. Watkins Co. v. Rich, 254 Mich. 82, 235 N.W. 845, 846, holding that a power of termination, extended to "either of the parties" "at any time by giving the other party notice thereof," of a contract with a definite and stated duration did not authorize termination in the absence of "good faith." We do not find that this contention has been considered in the cited cases, though at least in the Buggs case the contract contained the provision before us here that the law of Michigan should govern its construction.

In the Rich case, a sales agent, substantially indebted to his principal, obtained the latter's assent to an extension of the agency and the debts for another year on condition that the former would procure several sureties on his written obligation to pay both the past debts and those arising in the course of the extended agency. After the agent had done so, but before he had had opportunity to make sales by the profit from which he could retire part of the old debts, the principal took advantage of the termination clause and sued the sureties for the entire amount due. Recovery was denied for lack of "good faith" in the termination. But in spite of the citing of "satisfaction" cases, such as Holton v. Monarch Motor Car Co., 202 Mich. 271, 168 N.W. 539, "good faith" here seems to have meant an original intention to offer the agent a fair opportunity, without which the contract would obviously have been void for fraud in its inception. Compare 45 Harv.L.Rev. 378 and 17 Corn.L.Q. 479. Only such an interpretation will prevent a conflict with the earlier decisions it did not overrule, which held a sales agency terminable entirely at the discretion of the parties merely for lack of any expressly fixed duration. Fuchs v. Standard Thermometer Co., 178 Mich. 37, 144 N.W. 484; Garlock v. Motz Tire & Rubber Co., 192

Mich. 665, 159 N.W. 344. In the Rich case the contract was for a definite period from its execution May 8, 1928, until March 1, 1929. Here the agreement was without stated duration except for the provision making it terminable at any time "at the will of either party." The difference in language alone might not be a sufficient basis for distinguishing the case; but that difference, coupled with the rather clear indication of fraud and its inconsistency otherwise with Michigan precedents, leads us to view it as not a binding authority upon us here.

With a power of termination at will here so unmistakably expressed, we certainly cannot assert that a limitation of good faith was anything the parties had in mind. Such a limitation can be read into the agreement only as an overriding requirement of public policy. This seems an extreme step for judges to take. The onerous nature of the contract for the successful dealer and the hardship which cancellation may bring him have caused some writers to advocate it, however; and an occasional case has seized upon elements of overreaching to come to such a result on particular facts. See, for example, Philadelphia Storage Battery Co. v. Mutual Tire Stores, 161 S.C. 487, 159 S.E. 825; the criticism of this case in 45 Harv.L.Rev. 378 and the answering arguments in 17 Corn.L.Q. 479 (and see also 31 Col.L.Rev. 830, 840, 842) well indicate the opposing views. But, generally speaking, the situation arises from the strong bargaining position which economic factors give the great automobile manufacturing companies: the dealers are not misled or imposed upon, but accept as nonetheless advantageous an agreement in form bilateral, in fact one-sided. To attempt to redress this balance by judicial action without legislative authority appears to us a doubtful policy. We have not proper facilities to weigh economic factors, nor have we before us a showing of the supposed needs which may lead the manufacturers to require these seemingly harsh bargains. In the Buggs case the court had before it a recent Wisconsin statute, St.1937, § 218.-01(3) (a) 17, providing for suspension or revocation of a license of a manufacturer who had "unfairly, without due regard to the equities of said dealer and without just provocation," canceled the dealer's franchise. There the statute was held not applicable, at least to an existing valid contract. But it suggests the proper source of remedy, if one is needed.

■ II. The second of the causes of action relied on is an alleged oral promise of defendant, "in consideration of plaintiff's agreement to invest further sums of money in the promotion of the sale and distribution of Ford products," not to cancel the dealership contract "except for a just and proper cause and upon adequate hearing first being given" to plaintiff. The court below held that there was not adequate showing of such a contract with duly authorized agents of defendant and also that it was "void and unenforceable as too uncertain, vague and indefinite." [30 F. Supp. 917, 923.] We are agreed in affirming this judgment on one or the other of these grounds, though we differ somewhat as to our reasons. The case chiefly relied on to show the contract unenforceable for uncertainty is Cummer v. Butts, 40 Mich. 322, 29 Am.Rep. 530, which does suggest that we may not speculate as to the meaning of a criterion so indefinite as "just and proper cause" or substitute our own ideas as to it for the unstated ideas of the parties. In that case it was held that a contract under which Butts agreed to sell lumber for Cummer, terminable on notice for "good cause," set a standard "too vague to be fairly intelligible," that good cause, "in such connection as to parties and subject matter, has no such distinct sense as to furnish a common and intelligible criterion for the parties, or any determinate sense whatever," and that "the case is one where the parties have failed to express themselves in terms capable of being reduced to lawful certainty by judicial effort." And the court held that Butts could not recover when Cummer canceled the contract "in good faith." So, too, in Oakland Motor Car Co. v. Indiana Automobile Co., 7 Cir., 201 F. 499, a contract terminable for good cause was held void for lack of mutuality; and somewhat similar holdings are to be found in cases such as Huffman v. Paige-Detroit Motor Car Co., 8 Cir., 262 F. 116, 117; Velie Motor Car Co. v. Kopmeier Motor Car Co., 7 Cir., 194 F. 324; and Royal Bank of Canada v. Williams, 220 App.Div. 603, 222 N.Y.S. 425, 430.

My brothers feel that under Michigan law, therefore, the alleged contract is unenforceable. They prefer this ground to any dealing with insufficiency of its proof, for they think the latter cannot be deter-

mined on summary judgment. I agree that no enforceable new contract, differently terminable than the first one, was set forth, but I prefer to place that conclusion upon matter presented in the record beyond the simple allegations of the complaint; for as to those alone, I think the law as it is developing is at least not clear. The text writers seem to feel that any condition on termination, even a fairly broad one, is deserving of respect. Professor Corbin, in The Effect of Options on Consideration, 34 Yale L.J. 571, 586, 588, reprinted in Selected Readings in Contract, 434, has an extended criticism of the Velie case (cf. also 22 Va.L.Rev. 324); and the Oakland case has been often criticized, as in 31 Col. L.Rev. 830, 840, 842, supra (but see 23 Col. L.Rev. 61), 14 N.C.L.Rev. 87, and 37 Mich. L.Rev. 132. The latter case was cited with distinct lack of warmth by Judge L. Hand in Moon Motor Car Co. of New York v. Moon Motor Car Co., 2 Cir., 29 F.2d 3, and Jay Dreher Corp. v. Delco Appliance Corp., 2 Cir., 93 F.2d 275 (noted in 37 Mich.L.Rev. 132 and 24 Va.L.Rev. 680), although these cases are distinguishable, for, as presented to the court, there existed in them more precise conditions of termination. And in the Cummer case, the vague reference to "good faith" might even mean that the court had substituted "good faith" for "good cause." It should be noticed that here we have the question of total invalidity of the contract, not that of exercise of a power to cancel under a valid contract, as we viewed the first question above. Though defendant claimed good cause existed here, that could not be established from the affidavits; moreover, as alleged, there was the important additional requirement of a hearing which was not claimed to have been held.

But the other documents of record show conclusively, I think, how vague and uncertain was this supposed oral agreement. A bill of particulars ordered by the court (which becomes a part of the complaint, Federal Rule 12(e), 28 U.S.C.A. following section 723c) states that the oral contract "in substance" provided that the dealership contract was not to be canceled by defendant "without cause and fair opportunity being given to the plaintiff to be heard thereon"; that defendant's settled policy was "Once a Ford dealer, always a Ford dealer"; that by the dealership contract "the plaintiff had become a member of the great Ford family; that the plaintiff would remain a Ford dealer as long as it wanted to"; that the Ford policy, settled for many years, "was a guarantee of this; and that the plaintiff need have no hesitation whatever in investing all available funds in the promotion of the sale and servicing of Ford products as such investments would be perfectly safe." Then, after giving the names of the Ford officials who were supposed to have made the agreement, it is asserted that the agreement was reaffirmed "at various times during the years 1935, 1936 and 1937, the exact dates of which plaintiff is unable at present to state," and that "at all such occasions, plaintiff was encouraged to enlarge its facilities, increase its sales force and expand its business, in reliance on the assurances given by the defendant that plaintiff was 'in' as a Ford dealer as long as it wanted and should have no concern over the wisdom of making long term commitments and long term plans."

These, therefore, are the formal allegations of the contract. It should be noted that nowhere do they come to a clear-cut promise for a definite consideraton, but the asserted statements are quite contradictory. Thus, if plaintiff could remain a Ford dealer as long as it wanted to, the other provisions for termination were improper. I think it clear that these were at most only "puffing" arguments to induce plaintiff to continue its activities, that no later definite substitutionary agreement was shown, and that in any event the power of termination of the original contract was not canceled or superseded. That contract provided that it could be amended only "by an instrument in writing" executed by named officials of the Ford company. Perhaps an earlier contract may not be employed to limit the contracting powers of the parties; at least it can show that the parties agreed not to be bound by indefinite oral asseverations. Mapu v. Agricultural Ins. Co., 244 App.Div. 268, 278 N.Y.S. 958.

If we turn from the formal allegations to the supporting affidavits, no different conclusion seems possible. Plaintiff's two active officers, Mr. and Mrs. Charles J. Burke, presented lengthy and argumentative affidavits, containing much material of an irrelevant and hearsay nature, but nevertheless valuable as showing that they were setting forth their entire case in its most favorable light—perhaps more favorable than would have been possible at a trial subject to legal rules of evidence.

They make oath to a number of these inducing statements by Ford regional officials, but all in the indefinite and contradictory form noted above and each obviously made without intent on the part of the speaker that what he said should supersede the formal dealership contract.

Again, unlike my brothers, who would allow trial on the issue, provided an enforceable contract had been alleged, I find no "genuine issue as to any material fact" within the summary judgment rule, 56(c), for lack of any showing of authority in Ford's regional officials to make the commitments claimed. Plaintiff was expressly put upon notice by the original agreement that only four named officials of defendant had authority to vary it, and defendant's several affidavits show that none of these acted. Indeed, none of them are persons named in plaintiff's bill of particulars as having made the oral agreement alleged. Plaintiff not only makes no suggestion of any evidence it has, or may discover, to the contrary, but shows that it is still relying on the appearance of things. The affidavits of plaintiff's officers go no further than that the regional officials were held out to treat with plaintiff within the terms of the written contract, and that the former may have claimed further authority for themselves; or, as stated, "the fact remains that they were, indeed, the only officials of the defendant company with whom we, or any other dealers in this district, could come in contact." That is not enough, in view of plaintiff's original agreement. See Ford Motor Co. v. Maddox Motor Co., Tex.Civ. App., 3 S.W.2d 911, affirmed Tex.Com. App., 23 S.W.2d 333; Fountain & Herrington, Inc., v. Mutual Life Ins. Co., 4 Cir., 55 F.2d 120, 123; Mapu v. Agricultural Ins. Co., supra.

Indeed, it is admitted that Mr. and Mrs. Burke shortly before the cancellation took a trip to Detroit; even there they did not see one of the named officers, but only a subordinate, who told them not to worry and that they would not "be canceled" because of any animosity on the part of any regional official. This obviously was in affirmance, not in derogation, of the original contract. In my judgment, the summary judgment will lose much of its usefulness, will be in effect little more than the old demurrer, if a "genuine issue" is discoverable when, as here, the full and complete affidavits of the parties show no basis upon which a plaintiff's verdict could be sustained. Banco de Espana v. Federal Reserve Bank, 2 Cir., 114 F.2d 438; Houghton Mifflin Co. v. Stackpole Sons, Inc., 2 Cir., 113 F.2d 627; Palmer v. Palmer, D.C.Conn., 31 F.Supp. 861, 867, 868.

III. The promise alleged in the third cause, to "allocate to the plaintiff a more profitable territory" as soon as such "would become available," even if it could stand against the same objections of lack of showing of its legal execution, is nevertheless as much subject to the written power of termination as are the original provisions of that contract. It must therefore be considered to be abrogated for the same reasons. Maddox Motor Co. v. Ford Motor Co., Tex.Com.App., 23 S.W.2d 333; Ford Motor Co. v. Maddox Motor Co., 123 Tex. 608, 73 S.W.2d 517.

Affirmed.

CHASE, Circuit Judge, concurs in the result.