Karen **STEPHENSON**, Plaintiff,

v.

**ALLSTATE INSURANCE COMPANY,** Defendant.

No. 00–CV–73148–DT.

United States District Court,
E.D. Michigan,
Southern Division.

April 25, 2001.

David B. Landry, Farmington Hills, MI, for plaintiff.

Diane L. Akers, Detroit, MI, for defendant.

### OPINION

DUGGAN, District Judge.

This is a breach of contract case in which Plaintiff Karen Stephenson, an Allstate Insurance Agent, asserts that Defendant Allstate Insurance Company has breached its duty of good faith and fair dealing in denying her request to purchase another agent's "book of business." Plaintiff also asserts that Defendant's act of improperly denying her request constitutes tortious interference with a business relationship or expectancy. This matter is currently before the Court on Defendant's motion for summary judgment. Oral argument regarding Defendant's motion was heard on April 5, 2001. For the reasons stated below, Defendant's motion for summary judgment shall be granted.

### Discussion

Plaintiff is an Allstate "exclusive agent" known within Allstate as an R3001 agent, referring to the "Allstate R3001 Exclusive Agency Agreement." Plaintiff executed her R3001 Agreement on June 10, 1996. Various provisions of the R3001 Agreement are pertinent to this dispute. First, Section XV of the R3001 Agreement, enti-

tled "Transfer of Interest in Agreement," states:

> This Agreement is personal to you .... Accordingly, you may not execute a transfer of your interest in this Agreement without prior written approval of the Company. A transfer of interest is described in the Supplement and includes, but is not limited to, any sale, merger, or assignment, in whole or in part, directly, indirectly, or contingently, of this Agreement or any rights or obligations under it. You have the obligation to notify the Company of a proposed transfer and to request approval. *The Company retains the right in its exclusive judgment to approve or disapprove such a transfer.*

(R3001 Agreement § XV.A). The R3001 Agreement also contains an integration clause that states: "This Agreement is the sole and entire agency agreement between the Company and you." (*Id.* § I.C). As to modifications, the R3001 Agreement provides that the Agreement "may not be modified except by a written agreement between the Company and you which expressly states that it modifies this Agreement. No other written statements, representations, or agreements ... will be effective to modify this Agreement." (*Id.* § XX.A).

The Independent Contractor Manual, which is expressly incorporated as part of the R3001 Agreement (R3001 Agreement § 1.D), states that an R3001 agent may transfer her economic interest in the business by "[s]elling the economic interest to an approved buyer." (Ind. Contractor Manual at 56–57). The Manual also informs the agents that "[a]s an R3001 Agent, you may sell your economic interest in your book of business at any time provided the buyer is approved by the Company." (*Id.* at 57). As to "Agency Sales

Between Existing R3001 Agents," the Manual states:

> An office partner (R3001 only) may be approved as a buyer of your interest in your book of business. The buying agent must have acceptable results in his current agency. The buying agent must also submit an acceptable updated Business Plan which includes a provision for providing a proper level of service for the total book of business after the sale (e.g. adding one or more Sales Producers, maintaining PSA status, etc.). Further, the buying agent must have a satisfactory business relationship with Allstate. This includes acting professionally with all representatives of the Company and demonstrating a willingness to work with Company management to achieve desired business results. *Please note that the buyer is always subject to final Company approval.*
>
> Approval may also be given if your location is in close proximity to the buying R3001 Agent's location. The business must be merged into one book in one of the locations. Satellite offices are not permitted. *Again, the buying agent must meet all the requirements noted above.*

(*Id.* at 59) (emphasis added).

In September of 1998, Plaintiff began negotiations with another R3001 Agent, Alex Yvannou, to buy his "book of business," *i.e.*, his book of Allstate accounts. After reaching an agreement to purchase, both Plaintiff and Mr. Yvannou notified their immediate Agency Manager, Linda Jordan, that Plaintiff was buying Mr. Yvannou's book of business. Plaintiff and Mr. Yvannou also contacted Human Resources regarding the sale. Plaintiff was initially advised that Human Resources was finalizing the paperwork for the deal and that she should prepare a business plan. When Plaintiff heard nothing fur-

ther, she again contacted Allstate to find out where to send her business plan, at which time she was told that Allstate had denied the purchase because of the "zip code rule."[1]

The "zip code rule" refers to the rule set forth in Allstate's Agency Relocation Guidelines, under which all agency initiated agent relocations are limited to the agent's "current zip code or immediately contiguous zip code." (1997 Agency Relocation Guidelines at 2). Nothing in the R3001 Exclusive Agency Agreement, the Supplemental Agreement, or the Independent Contractor Manual references a "zip code rule."

Allstate also publishes a "Weekly News Summary" entitled "Blueprints." Blueprints is used to communicate company information, including, from time to time, discussions regarding various company standards, policies, and procedures. As is relevant to this controversy, the following passage appeared in the April 23, 1998 "Human Resources" section of Blueprints:

*Here are a few questions regarding with the [sic] NOA changes:*

Q: Has the contiguous zip code requirements [sic] changed for agents moving from one location to another?

A. No, when an agent makes a request *to move* his/her office location the requirement of having a contiguous zip code is still in effect.

Q. Has anything changed regarding the location requirement of the sellers book of business and the buyers book of business, when approving a request for purchasing a book?

A. No, the same requirements are still in effect. When purchasing a book of business, the contiguous zip code rule is *not* a requirement, but the books of business must be within reasonable proximity to one another. This requirement provides for the buying agent to consolidate the two books and still provide the required customer service.

(Pl.'s Exs., Ex. D at 7) (emphasis in original).

Plaintiff's agency was located in Livonia zip code 48152 and Mr. Yvannou's agency was located in Canton zip code 48187; these zip codes do not fit within the contiguous "zip code rule." In December of 1998, Mr. Yvannou sold his book of business to another agent, Ronald Mathison. Mr. Mathison's Agency Purchase Approval Request lists a Canton zip code of 48187. (*Id.*, Ex. H).

Thereafter, Plaintiff filed the instant action asserting claims for breach of contract and tortious interference with Plaintiff's business relationship or expectancy. On January 16, 2001, Defendant filed a motion for summary judgment asserting (1) that Plaintiff's breach of contract claim fails as a matter of law because under the R3001 Agreement, Allstate retained the right to deny the sale based upon its "exclusive judgment," and (2) that Plaintiff's tortious interference claim similarly fails as a matter of law because Allstate retained the unqualified right to deny the proposed sale.

### Discussion

█ Summary judgment is proper only if there is no genuine issue as to any material fact, thereby entitling the moving

---

1. Although Allstate stated in its answer that it denied the purchase because of the zip code rule (Ans.¶ 20), it now asserts that such statement was incorrect, and that the purchase was not denied because of the zip code rule (Def.'s Br. Supp. Mot. Summ. J. at 4). Allstate, however, has assumed, for purposes of summary judgment only, that the purchase was denied because of the zip code rule. Accordingly, the Court shall do the same.

party to judgment as a matter of law. *Hunter v. Caliber Sys., Inc.,* 220 F.3d 702, 709 (6th Cir.2000); *see also* FED. R. CIV. P. 56(c). There is no genuine issue of material fact for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could "return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, the moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

 Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to show that there is a genuine issue for trial. FED. R. CIV. P. 56(e); *Celotex,* 477 U.S. at 322–24, 106 S.Ct. at 2552–53. The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 800 (6th Cir.1994). The nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Companies, Inc.,* 8 F.3d 335, 339–40 (6th Cir. 1993). If, after adequate time for discovery, the party bearing the burden of proof fails to make a showing sufficient to establish an essential element of his claim, summary judgment is appropriate. *Celotex,* 477 U.S. at 322–24, 106 S.Ct. at 2552–53.

### 1. Breach of Contract Claim

Plaintiff contends that the "Agreement" includes an implied covenant of good faith and fair dealing and that Defendant breached this implied covenant of good faith and fair dealing when it refused to approve Plaintiff's purchase of Mr. Yvannou's book of business based upon the "zip code rule." Plaintiff contends that the Independent Contractor Manual sets forth specific requirements for obtaining agency approval, which do not include the "zip code rule." (Ind. Contractor Manual at 59–60). The only relevant provision with respect to "geography" states "approval may also be given if your location is in close proximity to the buying R3001 Agent's location." (*Id.* at 59). Plaintiff contends that by applying the zip code rule in refusing her request to purchase Mr. Yvannou's book of business, Defendant has failed to apply the requirements that it specifically represented would be taken into consideration in making such decisions.

Plaintiff contends that because the R3001 Agreement specifically incorporates the Independent Contractor Manual, the requirements set forth in the Manual must be considered by Defendant in exercising its "exclusive judgment" to approve a sale; and that Defendant's failure to apply such requirements constitutes a breach of the implied covenant of good faith and fair dealing.

In support of her claim that, as a matter of fact, Defendant breached the implied covenant of good faith and fair dealing, Plaintiff points to undisputed evidence that:

(1) Plaintiff was denied the opportunity to purchase Mr. Yvannou's book of business because of the "zip code rule;" and

(2) Defendant, in its weekly news summary entitled "Blueprints," stated that "the contiguous zip code rule is *not* a requirement." (Pl.'s Exs., Ex. D at 7) (emphasis in original).

Defendant contends that it is entitled to summary judgment because the Agree-

ment expressly provides at Section XV.A that there can be no transfer of an interest in the Agreement "without the prior written approval of the Company" and that "the Company retains the right in its exclusive judgment to approve or disapprove such a transfer." According to Defendant, Plaintiff's argument that the requirements set forth in the Manual must be considered in conjunction with the exercise of its "exclusive judgment" lacks merit because the Manual expressly states:

> The Manuals are intended to be consistent with the express terms and conditions of the R3001 Agreement. To the extent that there is any conflict between any of the provisions of the Manuals and the express written terms of the R3001 Agreement, the R3001 Agreement shall govern.

(Ind. Contractor Manual at i). Defendant contends that because the language in the Independent Contractor Manual relied upon by Plaintiff conflicts with the "exclusive judgment" language of the Agreement, the language in the Agreement governs without any limitations.

■ Michigan law recognizes an implied covenant of good faith and fair dealing in the performance of all contracts where one party to the contract makes its performance a matter of its own discretion. *See Hubbard Chevrolet Co. v. General Motors Corp.*, 873 F.2d 873, 876–77 (5th Cir.1989) (applying Michigan law); *Ferrell v. Vic Tanny*, 137 Mich.App. 238, 243, 357 N.W.2d 669 (1984); *Burkhardt v. City Nat'l Bank*, 57 Mich.App. 649, 652, 226 N.W.2d 678 (1975) ("Where a party to a contract makes the manner of its performance a matter of its own discretion, the law does not hesitate to imply the proviso that such discretion be exercised honestly and in good faith."). In general, the implied covenant "seeks to protect the contracting parties' reasonable expectations" and serves "to supply limits on the parties' conduct when their contract defers decision on a particular term, omits terms or provides ambiguous terms." *Hubbard*, 873 F.2d at 876–77 (citing cases). As the Fifth Circuit has explained:

> Discretion in performance arises in two ways. The parties may find it to their mutual advantage at formation to defer decision on a particular term and to confer decisionmaking authority as to that term on one of them. Discretion also may arise, with similar effect, from a lack of clarity or from an omission in the express contract. In either case, the dependent party must rely on the good faith of the party in control. Only in such cases do the courts raise explicitly the implied covenant of good faith and fair dealing, or interpret a contract in light of good faith performance.

*Id.* at 877 (internal quotation and citation omitted).

■ The covenant of good faith and fair dealing, however, "cannot be employed, in interpreting a contract, to override express contract terms." *Cook v. Little Caesar Enter., Inc.*, 210 F.3d 653, 657 (6th Cir.2000) (citing *General Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1041 (6th Cir.1990)). Where the parties have "unmistakably expressed their respective rights," the covenant does not apply. *Hubbard*, 873 F.2d at 877 (internal quotation omitted).

■ Plaintiff relies on *Ford Motor Co. v. Meredith Motor Co., Inc.*, No. 99–456–B, 2000 WL 1513702 (D.N.H. Aug.24, 2000), to support her claim that even though an agreement contains express language that a party reserves the right to make certain determinations "in its best judgment," where that party then lists certain factors or criteria that the party will use in exercising its "best judgment," the agreement carries with it an implied covenant of good

faith and fair dealing that in exercising its "best judgment," the party will consider or apply the specifically listed factors. In other words, by including specific criteria or factors in the agreement, the party has "limited" its right to exercise its "best judgment."

This Court believes that *Meredith Motor Co.* is distinguishable from the case at hand. The district judge in *Meredith* concluded that the defendant's act of including specific criteria in its dealership agreement could lead to an expectation that such criteria would be used by the defendant when exercising its "best judgment" under the agreement. Therefore, in ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district judge concluded that the plaintiff had stated a claim that an implied covenant of good faith and fair dealing existed. The "agreement" in *Meredith*, however, is, in this Court's opinion, significantly different than the Agreement involved in this case.

The contract section at issue in *Meredith* stated:

> Representation Planning. The Company reserves the right to determine, in its best judgment, the numbers, locations and sizes of authorized dealers .... In making such determinations, the Company from time to time conducts, to the extent deemed adequate by the Company and subject to the ready availability of information, studies of the locality, including such factors as geographic characteristics, consumer shopping habits, competitive representation patterns, sales and service requirements, [etc.].

*Id.* at *3. As the district judge indicated, although the first sentence reserved the right to make such determinations in the company's "best judgment," the second sentence expressly stated that in making such determinations, the company would use certain criteria. Because of the proximity of the two phrases, the district court could not conclude, as a matter of law, that the criteria listed in the second sentence did not limit the company's right to exercise its best judgment. Because a jury could conclude that the second sentence limited the company's right to exercise its best judgment, thereby giving rise to an implied covenant that the listed criteria would be used in making such determinations, the plaintiff had succeeded in setting forth a cause of action alleging breach of the implied covenant of good faith and fair dealing.

Unlike the agreement in *Meredith*, however, the section relied upon by Plaintiff does not appear in close proximity to Section XV.A of the Agreement granting Defendant the exclusive right to approve or disapprove an agent's request to buy another agent's book of business. Rather, the section relied upon by Plaintiff appears in a separate document altogether. Furthermore, the agreement in *Meredith* specifically stated that "in making such determinations" the company would consider certain information. No such wording appears in this case. The Independent Contractor Manual states only that an R3001 agent "may be approved as a buyer," and to even be considered, the buying agent "must" meet certain criteria.

Moreover, the prefacing language in the Independent Contractor Manual explicitly states that the Manual was intended to be consistent with the express terms of the Agreement, and that to the extent there is a conflict, the express terms of the Agreement "shall govern." In this Court's opinion, the language in Section XV.A of the Agreement, which expressly requires "the prior written approval of the Company" and reserves the Company's "right in its exclusive judgment, to approve or disapprove such a transfer," on its face, re-

serves to Defendant the unlimited right to make decisions with respect to transfers. To the extent the language referred to by Plaintiff in the Independent Contractor Manual attempts to "limit" the language of Section XV.A, this Court believes such "limiting" language is inconsistent and in "conflict" with the provisions of Section XV.A; thus, the provisions of Section XV.A "shall govern." In addition, while the "limiting" language to which Plaintiff refers does discuss certain requirements that must be met before a transfer will be approved, the Court does not interpret such language as requiring that Defendant consider *only* these factors.

In this Court's opinion, it is also significant that with respect to the "geography" argument, the relevant provision of the Independent Contractor Manual simply provides that "approval *may* also be given if your location is in close proximity to the buying R3001 agent's location." (Ind. Contractor Manual at 59) (emphasis added). This phrase does not indicate what criteria Defendant *must* take into consideration in determining whether a location is in "close proximity" to another agent's location.

■ Plaintiff argues that the statement contained in the Human Resources section of the April 23, 1998 Blueprints expressly states that the "zip code rule" will not be used in evaluating "close proximity." However, this Court does not believe that the Blueprints can be considered a part of the Agreement (or the Manual that is incorporated by reference) for two reasons.

First, Section XX.A of the Agreement specifically provides that the Agreement "may not be modified except by a written agreement between the Company and you which expressly states that it modifies this Agreement." Nothing in the cited Blueprints meets this criteria.

Second, to the extent Plaintiff believes that the Blueprints modifies the Agreement, such argument must fail. Nothing in the record reveals that there exists any "consideration" for this "modification" so as to make it an enforceable modification. Although Plaintiff states that she "relied" on this language from the Blueprints, she does not indicate any "reliance" that would prohibit Defendant from using the "zip code rule" in making its decision with respect to approving a transfer. The only "reliance" that Plaintiff points to is the fact that, under the belief that the "zip code rule" did not apply to a transfer, she entered into a contract with Mr. Yvannou to purchase his book of business.

Defendant believes that *James v. Whirlpool Corp.*, 806 F.Supp. 835 (E.D.Mo.1992), and *Hubbard*, support its position that the Agreement in question in this case gives it the unfettered right to deny approval. At the hearing on April 5, 2001, counsel for Plaintiff agreed that the court's holding in *Whirlpool* was correct with respect to the agreement at issue in that case. Plaintiff, however, believes that the "additional" language contained in the Independent Contractor Manual distinguishes *Whirlpool* from the facts of this case. This Court disagrees.

In *Whirlpool*, the court stated:

In the present dispute, the terms of the Agreement are unmistakably expressed. Paragraph 15 plainly provides SLAP could assign its rights under the Agreement only upon prior written consent. The Agreement does not limit Whirlpool's discretion in approving or disapproving a transfer.

*James*, 806 F.Supp. at 843. As previously indicated, this Court does not believe that the language in the Independent Contractor Manual limits Defendant's ability to exercise its exclusive judgment. Furthermore, the Agreement in this case, like the

agreement in *Whirlpool*, explicitly states that a party may not transfer his or her interest "in this Agreement without the prior written approval of the Company." (Agreement § XV.A). Clearly, Defendant did not give its written approval.

In *Hubbard*, the Fifth Circuit discussed and applied Michigan law to a contract dispute. The *Hubbard* court acknowledged:

> Michigan common law, which controls under the dealer agreement, recognizes an implied covenant of good faith and fair dealing that applies to the performance and enforcement of contracts. Generally speaking, the implied covenant seeks to protect the contracting parties' reasonable expectations.
>
> \* \* \* \* \* \*
>
> The implied covenant of good faith and fair dealing essentially serves to supply limit on the parties' conduct when their contract defers decisions on a particular term, omits terms, or provides ambiguous terms.

*Hubbard*, 873 F.2d at 876 (citations omitted). As the *Hubbard* court recognized, however, "Michigan law does not imply the good faith covenant where parties have 'unmistakably expressed' their respective rights". *Id.* at 877.

The agreement in *Hubbard* provided that a dealer could only conduct operations from a location approved by GM. If a dealer wanted to relocate, it had to notify General Motors. The agreement further provided that "[n]o change in Dealership Location ... will be made without the written approval of General Motors." *Id.* In determining whether the implied covenant of good faith and fair dealing applied, the court discussed two cases. It distinguished the Michigan Court of Appeals's decision in *Burkhardt* because in *Burkhardt* the mortgage agreement provided for the bank to establish an escrow fund

"estimated by the mortgagee" to be sufficient to pay taxes and insurance. The *Burkhardt* court concluded that the implied covenant of good faith applied "by virtue of the mortgagee bank's considerable discretion to estimate those sums." *Id.*

The *Hubbard* court also discussed *Bushwick–Decatur Motors v. Ford Motor Co.*, 116 F.2d 675 (2d Cir.1940), which applied Michigan law. *Bushwick* involved a dealership contract that allowed for termination "at any time at the will of either party by written notice." The plaintiff in *Bushwick* claimed that his dealership contract was terminated in bad faith. The court rejected the plaintiff's claim holding that Ford Motor Company's right to terminate was not limited by a good faith requirement. According to the *Bushwick* court:

> With a power of termination at will here so unmistakably expressed, we certainly cannot assert that a limitation of good faith was anything the parties had in mind. Such a limitation can be read into the agreement only as an overriding requirement of public policy. This seems an extreme step for judges to take.

*Bushwick*, 116 F.2d at 677.

The *Hubbard* court, quoting the above passage from *Bushwick*, concluded that the clauses in the contract that "flatly preclude[d] relocation absent GM approval"— excluded the application of a covenant of good faith and fair dealing. *Hubbard*, 873 F.2d at 878. In so concluding, the court explained that Hubbard and GM had deferred no decision regarding relocation or the relevant factors. "They gave GM the authority to approve or disapprove relocation for its own reasons and thus set out the limits of what the contract requires of the parties." *Id.* at 877.

■ This Court is satisfied that the Agreement forming the subject matter of

this dispute gave Defendant the right to exercise its "exclusive judgment." The language to which Plaintiff refers in the Independent Contractor Manual did not in any way limit Defendant's "exclusive judgment." There is no implied covenant of good faith and fair dealing where the parties have "unmistakably expressed" their respective rights. *Id.* In this Court's opinion, the Agreement clearly spells out that any decision with respect to approving a transfer rests within the exclusive judgment of Defendant, and that no transfer could take place without the written approval of Defendant. Because Defendant exercised its exclusive judgment to deny the transfer, and because Defendant did not give written approval, Plaintiff's breach of contract claim must fail.

### 2. Tortious Interference With Business Relationship or Expectancy

Defendant also seeks summary judgment on Plaintiff's claim of tortious interference with a business relationship or expectancy. In support of its motion for summary judgment, Defendant contends that because the R3001 Agreement granted it the right to approve or deny purchase requests, as a matter of law, it could not interfere improperly with Plaintiff's relationship with Mr. Yvannou. This Court agrees.

 To establish a claim for tortious interference under Michigan law, Plaintiff must show: "(1) the existence of a valid business relation or expectancy, (2) knowledge of the relationship or expectancy on the part of the defendant, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage." *Grand Rapids Plastics, Inc. v. Lakian,* 188 F.3d 401, 407 (6th Cir.1999) (citing *Michigan Podiatric Med. Ass'n v. National Foot Care Program, Inc.,* 175 Mich.App. 723,

438 N.W.2d 349 (1989)). To make out a claim for tortious interference with business relations, Plaintiff " 'must allege the intentional doing of a per se wrongful act or the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading [P]laintiff's contractual rights or business relationship.' " *Chrysler Int'l Corp. v. Cherokee Export Co.,* 134 F.3d 738, 745 (6th Cir.1998) (quoting *Feldman v. Green,* 138 Mich.App. 360, 368, 360 N.W.2d 881 (1984)).

 Plaintiff contends that Defendant's act of using the zip code rule to deny her purchase request constitutes a per se wrongful act. A "wrongful act" is "any act which in the ordinary course will infringe upon the rights of another to his damage, except it be done in the exercise of an equal or superior right." *Chrysler Int'l Corp.,* 134 F.3d at 745. "A 'per se wrongful act' is an act that is inherently wrongful or one that is never justified under any circumstances." *Formall v. Community Nat'l Bank,* 166 Mich.App. 772, 780, 421 N.W.2d 289 (1988).

In essence, Plaintiff contends that Defendant engaged in a per se wrongful act and interfered in her business relation with Mr. Yvannou by denying her purchase request. The R3001 Agreement, however, grants Defendant the right to approve or deny purchase requests. Given that Defendant had the right to approve or deny such requests, Defendant's exercise of that right cannot, as a matter of law, constitute a per se wrongful act, or interference with Plaintiff's business relationship. *See James,* 806 F.Supp. at 844.

 Furthermore, to maintain a cause of action for tortious interference, Plaintiff must establish that Defendant was a "third party" to the contract or business relationship. *Cook,* 210 F.3d at 659 (citing *Reed v. Michigan Metro Girl*

*Scout Council,* 201 Mich.App. 10, 12, 506 N.W.2d 231, (1993)). Because the R3001 Agreement gave Defendant the right to approve or deny any sale of an agent's book of business, Defendant was not a "third party" to the business relationship, but rather, a party directly involved in such relationship. Consequently, Plaintiff's claim for tortious interference is precluded. *Id.* at 659–60 (finding that franchisor that retained right to approve franchise transfer was party to agreement and therefore, claim of intentional interference with business relationship was precluded). Accordingly, Defendant's motion for summary judgment shall be granted with respect to Plaintiff's claim of tortious interference with a business relationship or expectancy.

### Conclusion

For the reasons stated above, Defendant's motion for summary judgment shall be granted. A Judgment consistent with this Opinion shall issue forthwith.